MASSASOIT STEAM MILLS COMPANY *vs.* WESTERN ASSURANCE COMPANY.

Suffolk. March 6. — July 29, 1878. COLT & SOULE, JJ., absent.

A. made an application for insurance against fire to B., an insurance agent, who had authority to issue policies in the R. Company and to bind the W. Company. B. decided to place the risk in the R. Company and wrote a policy, which provided that the insurance might be terminated at any time at the company's option, on giving notice thereof. The R. Company refused to take the risk, but no notice thereof was given to the plaintiff, and B. immediately, without the plaintiff's knowledge, made a memorandum placing the risk in the W. Company; and a loss afterwards occurred on the same day. A. knew that the policy was written in the R. Company before the fire. *Held*, that the policy in the R. Company was in force at the time of the fire; that B. had no authority to rescind the contract without the consent of the parties; and that the W. Company was not liable.

CONTRACT. The first count was upon a policy of insurance against fire, alleged to have been made on November 2, 1875, by the defendant to the plaintiff. The second count was upon an agreement to insure and to deliver a policy of insurance. Writ dated September 18, 1876. At the trial in the Superior Court, before *Wilkinson*, J., the following facts appeared :

The plaintiff's property, described in the policy, was partially destroyed by a fire which broke out between 11 and 12 o'clock on the night of November 2, 1875. On or before November 1, 1875, Holden P. Durfee, the treasurer of the plaintiff corporation, duly authorized to keep its property insured, directed Benjamin L. Wood, an insurance agent, to effect insurance in place of certain policies then expiring. Wood, in the afternoon of Monday, November 1, 1875, asked Joseph W. Hinckley, one of the firm of Jackson and Hinckley of Taunton, agents of the Revere

Insurance Company, the Western Assurance Company, and of other companies, whether he could place $2500 on the Massasoit Steam Mills. Hinckley, after consulting with Jackson, reported to Wood that they would take the $2500, but did not tell him in what company. Jackson and Hinckley had authority to write policies in the Revere Company, but their authority in the defendant company was limited to binding the company, the policies being written by one Carpenter, the general agent in Boston. Jackson and Hinckley decided to write the $2500 in the Revere, and a policy was written by them on November 1 or 2 in the Revere, and the placing of the risk was reported to the main office of the Revere in Boston, on November 1. On Tuesday evening, November 2, about 6 o'clock, Jackson took a letter from the post-office in Taunton, from the president of the Revere Insurance Company, declining the risk. Jackson read it, took it to his office, laid it upon his desk, left his office and returned there the same evening about half-past seven or eight o'clock. The Revere policy at that time was in his office, not having been delivered. He then consulted with Hinckley, and they decided to place the risk at once in the defendant company, and Hinckley made a memorandum to the following effect: " Nov. 2, 1875, Massasoit Steam Mills, $2500 in Western Assurance." On the morning of November 3, about 8 o'clock, before going to Boston, Hinckley went to the house of their clerk and said that the Revere Company had declined the risk on the Massasoit Steam Mills, and instructed the clerk to report the risk to the Western Assurance Company, for Carpenter to write the policy. On this day both Jackson and Hinckley were absent from Taunton, and, at the time of the conversation with his clerk, Hinckley was ignorant of the fact that the fire had occurred the night previous, nor did Jackson know of the fire before leaving Taunton. On November 3, about 9 o'clock in the morning, Wood went into the office of Jackson and Hinckley and told the clerk that the Massasoit Steam Mills were burned, and that the mills wanted their policies, and asked if Jackson and Hinckley had written a policy for him. The clerk said they had in the Revere, but that the Revere had declined to take it, and that she had instructions to place it in the Western, and asked Wood what to do, because, as she said, she did not know whether she should insure a build-

ing after it was burned; and told him she would wait until Hinckley returned. Wood asked her if she had the Revere policy in the office. She said she had, and Wood said, "I will take it." She replied, "Had you better take it before they" (Jackson and Hinckley) "come?" Wood answered, "Yes; I must have something to show for that insurance." The clerk thereupon gave it to him, and Wood took the Revere policy with others to Durfee and delivered it to him. On November 3, Jackson and Hinckley wrote to Carpenter, informing him of the burning of the Massasoit Steam Mills, and that they had placed the risk in the Western Assurance Company $2500 the evening before the fire. They did not make a report of the form of the written portion of the policy to the Western Assurance Company until the morning of November 4, and on the evening of November 4, or in the morning of November 5, they received from Carpenter a policy covering the property destroyed, dated November 2, for a period of one year, beginning at noon of November 2, being the policy declared on. On the morning of November 5, Jackson took the Western Assurance policy to Fall River and asked Durfee to exchange the Revere policy for it. Durfee was busy at that time, and told Jackson that he would meet him at the bank between 12 and 1 o'clock. Durfee was at the bank at the time appointed, but Jackson did not appear, and Durfee did not at any time exchange the Revere policy for the Western Assurance, concluding, as he expressed it in his testimony, that a bird in the hand was worth two in the bush. At the time Wood handed the Revere policy to Durfee, he did not state the circumstances under which he got possession of the policy.

Jackson received a telegram from Carpenter on November 6, asking him to return the policy in the Western. He retained the policy some four or five days and then returned it to Carpenter. On June 5, 1876, the plaintiff demanded the policy of Carpenter, but he did not then deliver it, nor has he since delivered it. Wood, on November 2, before the fire, was aware that Jackson and Hinckley had placed the risk in the Revere, but how he acquired the knowledge did not appear.

Wood and Jackson and Hinckley had considerable business dealings in the way of placing risks for each other, and it was not their custom to pay over the premiums at the time the risks

were bound, but to account for the same in their monthly settlements.

Some time after the fire, Wood tendered to Jackson and Hinckley the amount of the premium for the $2500 covered by them, but they declined to receive it, either for the Revere Insurance Company or for the defendant, on account of the controversy that had arisen. The policy sued on had no provision making the liability of the company conditional upon the payment of the premium.

It further appeared that the Revere Insurance Company was the party really interested as plaintiff in this suit, in consequence of an arrangement made between said company and the Massasoit Steam Mills Company, and that the Massasoit Steam Mills Company claimed to hold only one of the two companies, the Western Assurance or the Revere.

The Revere policy contained the following clause: "The insurance may also be terminated at any time, at the option of the company, on giving notice to that effect, and refunding a ratable proportion of the premium."

The plaintiff made proofs of loss, duly sworn to, to all the companies except the Western, on December 2, 1875, in each of which the name of the Revere Insurance Company was inserted and the name of the Western did not appear. Proof of loss was made to the defendant on June 14, 1876, similar to the ones made on December 2, 1875, except that the name of the Revere which was printed was stricken out, and the name of the Western interlined, the proofs to the Revere and the Western each being returned upon its receipt by them.

Upon these facts the defendant asked the judge to rule that the plaintiff could not maintain the action, but the judge refused so to rule, directed the jury to return a verdict for the plaintiff, and reported the case for the determination of this court. If, upor the facts, the action could be maintained, judgment was to be entered upon the verdict; otherwise, judgment for the defendant.

*F. C. Welch & F. I. Amory*, for the defendant.

*M. F. Dickinson, Jr. & J. Fox*, for the plaintiff, contended that Jackson and Hinckley had tne right in good faith to alter their choice of the company in which insurance was to be effected,

at any time before the delivery of the policy or notice to the plaintiff, and that having done so, and placed the risk in the defendant company, the latter was liable; and cited *Trippet* v. *Eyre*, 2 Ventr. 113 ; *Ward* v. *Day*, 4 B. & S. 337 ; *Damon* v. *Granby*, 2 Pick. 345; *Excelsior Ins. Co.* v. *Royal Ins. Co.* 55 N. Y. 343.

LORD, J. There can be no doubt that the policy of the Revere Insurance Company had attached before the fire. On or before November 1, 1875, application was made in behalf of the plaintiff for insurance. This application was made to Jackson and Hinckley, who were agents of the defendant company, and agents also of the Revere Insurance Company. These agents had authority to issue policies of the Revere Insurance Company. They had no authority to issue policies of the defendant company, though they had authority temporarily to bind it. On November 1, such agents informed the agent of the plaintiff that they had taken the insurance in the amount requested, to wit, in the sum of $2500. They did not tell him in what office they had taken it. This, however, is what they had done : They had decided to insure in the Revere Insurance Company. They had written the policy in that office under the plaintiff's application, and had notified the office to that effect. This was the precise condition of things from November 1 to the evening of November 2. If a loss had happened during that interval, there can be no doubt that the Revere Insurance Company would have been liable for it upon that policy. The Revere policy having attached, it could terminate only by the expiration of the risk, by the agreement of the parties, or by some means provided by the contract. The risk had not terminated at the time of the loss. The parties had not agreed to vacate the policy. The policy, however, provided for its determination at the will of the company ; this, however, was conditioned upon notice being given of the termination ; no notice was given. The policy remained in force, and the Revere Insurance Company was liable upon it. On November 2, the Revere Insurance Company declined the risk. Upon the facts, as reported, the company could not decline the risk, except by terminating the same by notice, which was not given. Jackson and Hinckley, the agents of the Revere Insurance Company, concluded to put the risk in the defendant

company; this they had no authority to do. They had the option originally to insure in either company, but, having exercised that option in a mode which constituted a valid contract between the plaintiff and the Revere Insurance Company, their power was exhausted. Rights had become fixed, which they could not at their will change. If, before the loss, there had been any evidence of the plaintiff's assent to the change, it might have been made; but there was no such evidence. It appears as a fact, that Wood, who was the agen' of the plaintiff to procure the insurance, and upon whose application the policy in the Revere Insurance Company was written, knew before the fire that the policy had been made by the Revere Insurance Company. He, having made the application to Hinckley for the insurance, and having left him the option of the office in which insurance should be effected, upon learning that the insurance was made in the Revere Insurance Company, made no objection to it; his failure to do so would be a ratification of the selection, if such ratification were necessary; for, upon the determination of Jackson and Hinckley to insure in the Revere Insurance Company, and upon the writing of the policy, the company in which insurance was to be made being wholly in their option, the contract was complete. There was no condition precedent to the taking effect of the contract The mode of payment of premium was understood by the parties, and no objection was then or is now made that either payment of the premium or delivery of the policy was a condition prece dent to the consummation of the contract.

The loss was one, therefore, for which the Revere Insurance Company was liable. There is no claim that insurance either was, or was contemplated to be, in more than one of the two companies; and we think that the report of the case shows that the exact legal effect of the acts in relation to the insurance was understood by the parties, and that all parties understood that, upon the facts, the Revere Insurance Company was responsible to the plaintiff for the loss. Inasmuch, however, as Jackson and Hinckley, who completed the insurance for the Revere Insurance Company, were also agents of the defendant company, with power to bind it; and inasmuch as they had determined to vacate the insurance in the Revere Insurance Company and to insure in the defendant office, it is supposed that this action is

brought because, as between the two companies, the equities are in favor of the Revere Insurance Company, and that equitably the defendant company should pay the loss; that as between the two companies equitably the insurance by the defendant com· pany was a reinsurance in behalf of the Revere Insurancc Company.

The fire occurred on November 2, 1875. On December 2, following, the plaintiff made proof of loss to the Revere Insurance Company but not to the defendant. On June 5, 1876, the plaintiff demanded the policy declared on of the defendant, which did not deliver it; on June 14, 1876, proof of loss was made to the defendant company, and on September 18, 1876, this action was commenced. The report finds: "It further appeared that the Revere Insurance Company was the party really interested as plaintiff in this suit, in consequence of an arrangement made between said company and the Massasoit Steam Mills Company, and that the Massasoit Steam Mills Company claimed to hold only one of the two companies, the Western Assurance or the Revere."

If the plaintiff under a mistake, whether of law or fact, made his claim against a company which was not liable, such mistake will not preclude it from recovering against a party who is liable. We do not, however, see that any such mistake was made, nor do we perceive that any party supposed any mistake was made. If the defendant company is liable, the Revere Insurance Company can have no possible interest in the plaintiff's legal claim against the defendant; and we cannot see how the Revere Insurance Company can have a legal interest in the plaintiff's claim against the defendant; and we can see no reason why the Revere Insurance Company should be interested except as above stated, and that, because of the relation of Jackson and Hinckley to each company, as between these two companies, the defendant should equitably bear the loss. But such a claim cannot be recognized in a suit at law in the name of the plaintiff against the defendant.

The legal rights of the parties to this action are to be determined by the decision of the question whether at the time of the fire there was an existing contract covering the subject insured between the plaintiff and the Revere Company. There was no

agreement by the defendant to insure, except in substitution for the insurance by the Revere Insurance Company, or by insurance to take effect upon the termination of the Revere Company's insurance. If the contract with the Revere Insurance Company was an existing contract, the agreement of the plaintiff was necessary in order effectually to substitute another insurance; of such agreement there is no evidence. If there was a subsisting agreement between the plaintiff and the Revere Insurance Company, that agreement was not terminated before the fire, and the other contingency to insure after the expiration of the Revere policy has not arisen. For the reasons before stated, it is clear that had the fire occurred at 10 o'clock in the morning instead of at 10 o'clock in the evening of November 2, the Revere Insurance Company must have been liable for the loss; but it could not have been liable unless there was, at that time, a subsisting contract between the parties; and that there was then a subsisting contract there can be no doubt.

The result therefore is, that, according to the terms of the report, there must be                    *Judgment for the defendant.*