CATHERINE McCLOSKEY, MARGARET BROOKS, AND MARY LARKIN *v.* SPRINGFIELD FIRE AND MARINE INS. CO.

October Term, 1903.

Present: ROWELL, C. J., TYLER, MUNSON, START, and WATSON, JJ.

Opinion filed January 4, 1904.

*Fire Insurance Policy—Surrender—Mental Capacity of Insured—Question for Jury.*

In an action on a fire insurance policy, to the defense that the policy had been surrendered and cancelled in accordance with its terms, it is a good reply that the insured, by reason of mental disease, was incapable of understanding the nature and consequence of the act of surrender; and this question is properly submitted to the jury.

ASSUMPSIT on a fire insurance policy. Plea, the general issue, with notice of the surrender and cancellation of the policy. Trial by jury at the September Term, 1902, Rutland County, *Stafford,* J., presiding. Defendant's motion for a verdict overruled, to which the defendant excepted. Verdict and judgment for the plaintiff. The defendant excepted.

The defendant's motion for a verdict was made at the close of all the evidence, and was upon the ground: "First, because the surrender and cancellation of said policy was not the making of a contract, but the exercise of a right, and it mattered not whether the plaintiff was sane or insane at the time. Second, because if the plaintiff was without sufficient

mental capacity, as the evidence tended to show, that this condition had existed from a time considerably before the issuing of the policy until after its surrender, and the plaintiffs can not take advantage of the issuing of the policy, and avoid the cancellation; and Third, because there was no evidence tending to show that the defendant knew, or in the exercise of reasonable prudence, ought to have known, of the want of mental capacity on the part of the plaintiff."

*Charles L. Howe* for the defendant.

The surrender and cancellation of the policy is not a contract, but the exercise of a right, and the plaintiff, whether sane or insane, could exercise this right.   Ostrander on Fire Ins. 2 Ed. § 17; *Massasoit, etc. Co.* v. *Western, etc. Co.,* 125 Mass. 110; *Lincoln* v. *'Buckmaster,* 32 Vt. 653.

*Butler & Moloney* for the plaintiffs.

The cancellation or discharge of a contract requires the same capacity in the parties that it requires for making.  Clark on Contracts § 256; *Wheeler* v. *R. Co.,* 115 U. S. 29.

The question is did the insured have the mental capacity to understand what she did.  *Stewart* v. *Flint,* 59 Vt. 152; *Davis* v. *Cummings,* 60 Vt. 282; *Day* v. *Seeley,* 17 Vt. 542; *Falch* v. *Goltschalk,* 71 Am. St. Rep. 418.

Defendant can not avoid its contract by reason of the insanity of the other party.  *Atwell* v. *Jenkins,* 47 Am. St. Rep. 463.

TYLER, J.  Action to recover the amount of loss under an insurance policy, issued by the defendant to the plaintiffs June 20, 1900, and insuring them for five years against loss by fire on their dwelling house.  The plea and notice raise

the question of a surrender and cancellation of the policy. The property was destroyed by fire July 8, 1901.

It was provided in the policy that it might be cancelled at any time at the request of the insured, or by the company by giving the insured five days' notice, and that if it should be cancelled, or become void, the premium having been actually paid, the unearned portion should be returned on surrender of the policy, the company retaining the customary short rate, except that, if the policy was cancelled by the company by giving notice, it should retain only the pro rata premium.

February 20, 1901, Mary Larkin, one of the plaintiffs, surrendered the policy to the defendant's agent and was paid $5.40 as return premium, and the policy was cancelled. The plaintiffs claim that this act was void by reason, as they allege, of the plaintiff's want of mental capacity to understand the nature and consequences of her acts, and that the policy was therefore in force when the fire occurred.

The policy was by its terms to continue in force until the expiration of the risk unless sooner terminated by the exercise of the option of one of the parties, as provided, or by the agreement of both. There is a manifest distinction, as claimed by the defendant and as laid down by the authorities cited, between the abrogation of an insurance contract by agreement of the parties and its cancellation by one party in the exercise of a right reserved in the contract. Ostrander on Fire Ins., 2nd Ed. s. 17; *Massasoit Steam Mill Co.* v. *Western Assurance Co.*, 125 Mass. 110. But these authorities do not support the defendant's position, that the plaintiff, though insane but having no guardian, could and did exercise the right of option, and that the defendant was bound to respect it and return the premium. It may not have required as much mental capacity to perform this voluntary act as it did to

make the insurance contract, but some capacity was required to exercise the right reserved in the policy; therefore the court properly submitted to the jury to decide—not whether the plaintiff was sane or insane—but whether, by reason of mental disease, she was incapable of understanding the nature and consequences of her act. As the jury found her incapable, the surrender was not her act.

The exceptions state that the defendant made no other question during the trial than that of Mrs. Larkin's mental capacity with reference to the exercise of this right.

*Judgment affirmed.*