GEORGE F. WILSON *vs.* NEW HAMPSHIRE FIRE INSURANCE COMPANY.

Hampden.    Sept. 23. — Oct. 24, 1885.    FIELD, C. ALLEN, & GARDNER, JJ., absent.

A. instructed B. to procure insurance in some good company. B. applied to C., an insurance agent, (who had authority to issue policies in the U. Company and in the N. Company,) and C. delivered to B. a policy in the U. Company, which contained a clause reserving to the company the right, after giving written notice to the insured, to cancel the policy as to all risks subsequent to the expiration of ten days from such notice. B. delivered the policy to A., who accepted it. Ten days later the insurance company directed C. to cancel the risk. C. thereupon entered the risk on the policy register of the N. Company, and made out a policy. Five days later, the property insured was destroyed by fire. On the same day, after the fire, but with no knowledge of it, C. mailed the second policy to B. with a letter, dated the day before, informing him that the U. Company declined the risk, and requesting an exchange of policies. After he had sent the second policy, C., on the same day, received a letter from the N. Company declining the risk. B. notified C. of the loss on the same day, after he had received the second policy. C., after receiving the letter of the N. Company, went to see B., and A., at B.'s request, and in C.'s presence, handed the first policy to B., and accepted the second policy in exchange; and B. then gave the first policy to C., at his request. Each company returned the premium to C., and refused to pay the loss. *Held*, that A. could not maintain an action against the N. Company.

CONTRACT upon a policy of insurance, in the form prescribed by the Pub. Sts. *c.* 119, § 139, against loss by fire, in the sum of $2000, upon a frame building in process of erection in Palmer, and on materials used in building the same, for three years from April 13, 1883. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, upon agreed facts, in substance as follows:

On April 12, 1883, Homer C. Strong, an insurance broker, in accordance with instructions from the plaintiff, applied to S. C. Warriner, who was an agent for several insurance companies, at

Springfield, for a policy of insurance in the sum of $2000, in some good company, on the plaintiff's frame building, then in process of erection, in Palmer.  Warriner forthwith delivered to Strong a policy, countersigned by Warriner as agent, in the Union Insurance Company, of Philadelphia, Pennsylvania, duly executed by that company, in the same form as the policy in suit.  Strong then delivered the policy to the plaintiff, who accepted it, and Warriner charged the premium to Strong, with whom he had an open account, and credited the same to the insurance company.  On April 23, 1883, Warriner received a letter from the company, dated April 21, instructing him to cancel the policy.  Warriner forthwith entered the risk upon the policy register of the defendant company, and wrote the policy in suit, immediately notifying the defendant of the same. At the time when Warriner wrote the policy in the defendant company, he credited the company with the amount of the premium, in accordance with his usual custom.  On April 28, 1883, about one o'clock in the morning, the building insured was destroyed by fire.  About seven o'clock on the same morning, Warriner, who had no knowledge of the loss, mailed the policy in suit to Strong, accompanied by a letter dated April 27, informing him that the Union Company had declined the risk, and requesting an exchange of policies; which letter was received by Strong on the same morning.  Warriner, who had transacted considerable insurance business for Strong, had authority from him to make changes of insurance, if any risks placed by him were declined or became inoperative from any cause.  On said April 28, after he had mailed the policy to Strong, Warriner received a letter from the defendant, dated April 26, declining the risk.  On said day, Strong notified Warriner by telegraph of the loss, after the receipt of the policy by Strong; and Warriner received the telegram.  In the afternoon of said April 28, Warriner, after receiving the defendant's letter declining the risk, went to Palmer, and the plaintiff, at Strong's request, and in the presence of Warriner, handed the policy in the Union Company to Strong and accepted the policy in suit in exchange.  Strong then gave the policy in the Union Company to Warriner, at his request, with the understanding that the plaintiff's rights should not be prejudiced in case he failed

to hold under the policy in suit. After the fire, Warriner made no change in his books, and each company stood credited with the amount of the premium named in the policy of each ; and Warriner wrote to each company, stating the facts as he understood them. Proofs of loss were duly made by the plaintiff to, and received by, each company. The defendant company, when it received the amount of the premium in the monthly account of Warriner, returned the same to him ; and the Union Company directed Warriner to charge the same back to it. Each company refused to pay the loss, and actions were brought against each by the plaintiff. Each policy, after providing that it might be cancelled at any time at the request of the insured, contained this clause: " The company also reserves the right, after giving written notice to the insured, . . . . and tendering to the insured a ratable proportion of the premium, to cancel this policy as to all risks subsequent to the expiration of ten days from such notice."

*G. M. Stearns & H. C. Strong*, for the plaintiff.

*G. W. Wiggin*, for the defendant.

W. ALLEN, J. The contract between the plaintiff and the Union Insurance Company was complete on April 13. Strong's authority was to procure insurance to the amount of $2000 in some good company ; and having done that to the acceptance of the plaintiff, his agency was accomplished, and he had no authority to surrender the policy, or to make further insurance in behalf of the plaintiff. Warriner could have no authority to act for the plaintiff, except what Strong was authorized to give him. When Warriner, on April 23, received instructions from the Union Company to cancel the policy, he did not give the ten days' notice, which was the only way in which the company could cancel the policy without the consent of the plaintiff ; but he attempted to procure the surrender of the policy by the plaintiff, and the acceptance of a policy in the defendant company in the place of it. His letter of April 27 was a proposal to the plaintiff, which neither Warriner nor Strong had authority to accept. It was for the plaintiff alone to say whether he would retain the policy he held, or surrender it in exchange for the other. Until he should consent, the first policy would remain in force, and the second would not become operative. There

was no acceptance of the proposal, and no contract between the plaintiff and the defendant company, before the interview between Warriner, Strong, and the plaintiff, on April 28. Before that time, the authority of Warriner to make the contract and deliver the policy for the defendant had been revoked, not only by the letter of April 26, which had before then been received by him, but by the loss of the property to be insured; and an acceptance of the defendant's policy by the plaintiff would not bind the defendant. *Massasoit Steam Mills* v. *Western Assur. Co.* 125 Mass. 110. *Stebbins* v. *Lancashire Ins Co.* 60 N. H. 65.

*Judgment for the defendant.*