CHARLES H. MEAD vs. PHENIX INSURANCE COMPANY.

Suffolk.   November 28, 1892. — January 11, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Policy of Insurance — Description — Property insured — Exception rendered immaterial.*

In an action on a policy of insurance for one year from September 8, 1890, at noon, it appeared that the application was made out on that day for the plaintiff by an insurance agent, not an agent of the defendant, and was forwarded to one C., the defendant's agent at O., whom it reached at about noon on September 9. The property intended by the plaintiff to be insured had been bu·ned earlier on the same day.   C. made out the policy, and after a delay of a few days forwarded it.   The property was described in the policy following the application, as grain "contained in the Elevator Building of the Ogdensburg Terminal Company at O., N. Y."   On September 8, there were two elevators at O., both operated by the Ogdensburg Terminal Company ; one new, owned by it, the other older, owned by a railroad company, but then let to the Terminal Company. The latter, which contained the plaintiff's grain, was burned on the 9th, as C. knew ; and C. testified that that elevator was known and distinguished as the Railroad Company's elevator, and the other as the Terminal Company's elevator. *Held*, that the court rightly directed a verdict for the defendant.

The plaintiff's exception to the introduction of evidence by the defendant was *held* to be immaterial by the judge's directing a verdict for the defendant.

HOLMES, J.   This is an action on a policy of insurance purporting to run for one year from September 8, 1890, at noon. The application was made out on September 8 for the plaintiff by an insurance agent, not an agent of the defendant, and was forwarded to one Chapin, the defendant's agent at Ogdensburg, whom it reached about noon on September 9.   The property intended by the plaintiff to be insured had been burned earlier on the same day.   The agent made out the policy, and after a delay of some days forwarded it.   There were later dealings which we do not deem it necessary to state.   The property insured was described in the policy, following the words of the application, as grain "contained in the Elevator Building of the Ogdensburg Terminal Company at Ogdensburg, N. Y."   On September 8 there were two elevators at Ogdensburg, both operated by the Ogdensburg Terminal Company ; one, a new one, owned by it ; the other, an older one, owned by the Ogdensburg

and Lake Champlain Railroad Company, but then let to the Terminal Company. The latter contained the plaintiff's grain. It was burned on the 9th, as Chapin knew, he having been present at the fire. Chapin testified that that elevator was known and distinguished as the Ogdensburg and Lake Champlain Railroad Company's elevator, and the other one as the Terminal Company's elevator. Subject to the plaintiff's exception, Chapin was allowed also to testify that, when he had the policy filled out, he intended to insure grain in the elevator which still was standing. This exception is immaterial, since the judge directed a verdict for the defendant, and therefore any testimony in its favor which a jury could have been warranted in disbelieving must be laid on one side. But apart from Chapin's testimony, there is only one rational view of the facts. It is absurd to suppose that he understandingly issued a policy on grain in an elevator which his own eyes had just seen burned to the ground.

Perhaps it would be pressing the principle of such cases as *Kyle* v. *Kavanagh*, 103 Mass. 356, and *Raffles* v. *Wichelhaus*, 2 H. & C. 906, too far to say that the description of the elevator containing the corn was one proper name in the mouth of the plaintiff, and another in that of the defendant, and that therefore the policy was void, and the supposed contract never made. On the other hand, it cannot be said that the description on its face pointed to the burned elevator alone, or that the defendant is in the position of having assented to words which it knew that the plaintiff was taking as describing the burned elevator. The most that can be said in favor of the plaintiff is, that the description, although meaning only one, and although most accurately fitting the elevator owned by the Terminal Company, was broad enough to apply to either elevator if the circumstances permitted and required it; in other words, that there was a latent ambiguity. See *Fowle* v. *Springfield Ins. Co.* 122 Mass. 191, 194, 198. Taking it that way, what were the circumstances? The plaintiff relies on the fact that his grain was in the old elevator. But the policy identifies the grain by the building, not the building by the grain. The plaintiff knew that there were two elevators in Ogdensburg, and had notice that the agent applied to for insurance was at the same place. He knew that that agent would not inquire at the elevators for the plaintiff's

grain, but would rely on the description. He must be taken to have had notice that, if an elevator should burn, the agent would be likely to know it, and that he would not insure the burned property thereafter. Under these circumstances, we think it plain that justice is against the plaintiff's claim, and perhaps it is not necessary to decide with extreme accuracy what the true ground for giving judgment for the defendant is. It might be argued that the plaintiff was bound by that construction of the policy which a reasonable man would give it under the circumstances in which it was issued, if the defendant gave it that construction in fact; that the only reasonable construction is one which would describe the still standing elevator, especially as that elevator was in a fuller sense than the other the building of the Terminal Company, and therefore that the policy, being upon grain in a building where the plaintiff had no grain, it was void. As a further reason for this view, it should be mentioned that the plaintiff's agent evidently used the words in the application as meaning the elevator owned by the Terminal Company, although his motive for doing so was mistaken. Another sufficient ground of decision is, that, however it may be when a policy on goods at a distance, the present condition of which is unknown, is dated back to a time before the agreement to insure, as in *Hallock* v. *Commercial Ins. Co.* 2 Dutch. 268, and *Commercial Ins. Co.* v. *Hallock*, 3 Dutch. 645, the antedating of this policy by a day under the cirumstances which we have described cannot be taken to have meant to insure the goods, burned or not burned, but the contract must be read as conditioned on the existence of the goods at the time when it was made in fact.

Still more shortly it may be said that Chapin had no authority to insure goods in the elevator which he knew was burned. *Wilson* v. *New Hampshire Ins. Co.* 140 Mass. 210. *Stebbins* v. *Lancashire Ins. Co.* 60 N. H. 65.

We see no reason to doubt that the foregoing principles would prevail in New York as well as here. The decisions relied on by the plaintiff would not have warranted the jury in finding that a different version of the common law from the one which we deem correct is accepted there. In both *Lightbody* v. *North American Ins. Co.* 23 Wend. 18, and *Whitaker* v. *Farmers' Union Ins. Co.* 29 Barb. 312, the contract of insurance had been

made, and a receipt given for the premium, before the fire, although the policy was not delivered until afterwards.

It was suggested that the jury might have found that the two elevators were one, and were collectively covered by the description, because connected by a belt gallery four hundred feet long. We are of a contrary opinion.

*Judgment on the verdict.*

*A. A. Wyman,* for the plaintiff.

*L. S. Dabney,* for the defendant.