ARTHUR A. CLARK

*vs.*

INSURANCE COMPANY OF NORTH AMERICA.

Knox.    Opinion March 12, 1896.

*Insurance.    Cancellation.    Notice.    Assent.*

</div>

Where a valid contract of insurance has been effected and the assured has accepted the policy in a particular company, the agent of the company has no right to cancel such policy, or place the assured in any other company, without the authority or request of the assured.

Where by the terms of the policy or contract of insurance, an insurance company reserves the right to cancel the policy by giving five days' notice to the assured, such cancellation can be effected only by giving such notice, or by the assent of the assured.

Without some stipulation authorizing it, an insurance company cannot cancel a contract of insurance once entered into, except with the assent of the assured.

Nor will such notice by the company be available after the liability of the company has become absolute by a destruction of the property by fire.

The contract of insurance is to be tested by the principles applicable to the making of contracts in general. The terms of the contract must have been agreed upon.

If the contract is incomplete in any material particular, or the assent of either party is wanting, it is of no binding force.

The property insured must be in existence at the time the contract of insurance is made, in order to render such contract valid.

ON REPORT.

The case appears in the opinion.

*C. E. and A. S. Littlefield*, for plaintiff.

The insurance effected by the agent, under the circumstances, in this case, in the second company is valid.

In the case of *Schauer* v. *Queen Ins. Co.*, 88 Wis. 561, where the plaintiff employed an insurance agent to keep certain property insured for such an amount, part of the insurance being taken in companies represented by the agent and part through other companies, and to avoid the frequent sending and returning of policies, as some were cancelled by the different companies, all of the policies were left with the agent, it was held that the agent had authority to receive for the insured notice of cancellation of policies, and that the plaintiff could not recover on a policy, notice of the cancellation of which had thus been given to the agent, who was the agent of the insurance company. This case on these facts is precisely parallel with the case at bar with the exception of the circumstance that the policy at bar had been delivered to the plaintiff, while in the case cited they were generally held by the agent of the company merely for the convenience of changing in case of cancellations. In *Buick* v. *Mechanics' Ins. Co.*, *61* N. W. Rep. 337, decided by the Supreme Court of Michigan, it was held that "an agent to whom the owners of property entrust the entire subject of insurance has

authority to cancel an insurance policy and take out a policy in another company without the owners' knowledge, so as to render the latter company liable." In that case the policies when issued were delivered to the principal by the agent. A like proposition was sustained by the court in *Grace* v. *Am. Central Ins. Co.*, 16 Blatch. 433.

It is to be noted in the case cited from the 61 N. W. Rep. the action was upon the policy itself, so that the precise question was distinctly involved, and upon it the case turned.

The only question here is whether the insurance in the defendant company is valid, and that does not necessarily turn upon the continuance of the insurance in the Commercial Union Insurance Company.

It is not necessary to establish the proposition that the agent of the Commercial Union, who was likewise the agent of the defendant company, had authority to receive the notice of cancellation so as to bind the plaintiff. The risk commences when the entry is made on the blotter, or the daily report is written. *Walker* v. *Metrop. Ins. Co.*, 56 Maine, 379.

The fact that the policy was not actually written up and delivered until after the fire can have no effect upon the rights of the parties if the risk commenced, as the agent of the defendant company admits it ordinarily would, upon the writing of the daily report. There is no substantial conflict in the authorities upon this point.

"Destruction of property after risk has commenced and before the policy is issued, if there be no fraud or concealment by the party insured, makes the company liable." *Com. Ins. Co.* v. *Hallock*, 3 Dutch. 645, S. C. 72 Am. Dec. 379.

An application to an insurance agent for a certain amount of insurance, the agent to select the companies, and his agreement to do so and give the insurance, constitutes a valid contract of insurance with each company as soon as it is written, although the policies are not delivered until after the property is destroyed by fire. *Mich. Pipe Co.* v. *Mich. F. & M. Ins. Co.*, 92 Mich. 482, S. C. 20, L. R. A. 277; *Peoria Ins. Co.* v. *Davenport*, 17 Iowa, 276; *Boice* v. *Thames, &c. Ins. Co.*, 38 Hun, 246, *Moore* v. *N. Y. Brewery Ins. Co.*, 55 Hun, 540.

The writing up of this contract of insurance by the daily report on the 18th was afterwards ratified by the plaintiff by his acceptance of the policy and exchanging therefor the policy that had been cancelled in the Commercial Union Ins. Co.

Not only do the provisions of our statute prohibit the defendant's denying that they were affected by the knowledge of their agent when this insurance was written, but the authorities generally sustain the proposition that where an agent under such circumstances has knowledge of the existence of prior insurance, it amounts to a waiver upon the part of the company of that condition in the policy. R. S., c. 49, §§ 19, 90; *Day* v. *Ins. Co.*, 81 Maine, 244; 1 May Ins. § 133; *Horwitz* v. *Eq. Mut. Ins. Co.*, 40 Mo. 557, S. C. 93 Am. Dec. 321; *Hough* v. *City Fire Ins. Co.*, 29 Conn. 10, S. C. 76 Am. Dec. 589, and note; *Kitchen* v. *Hartford Ins. Co.*, 57 Mich. 135, S. C. 58 Am. Rep. 344; *Hayward* v. *Nat. Ins. Co.*, 52 Mo. 181, S. C. 14 Am. Rep. 400.

When the facts of the case at bar are borne in mind, and it is remembered by the court that the policy in the Commercial Union Ins. Company was exchanged by the plaintiff for the one in the defendant company, and the defendant company has received and retains the full premium for the policy of the plaintiff, an examination of the cases cited contra will show a substantial legal distinction between them upon the facts and the case at bar.

*Wm. H. Fogler*, for defendant.

SITTING: WALTON, FOSTER, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

FOSTER, J.     The plaintiff desired to procure an insurance of $1,200 for six months on his carriages, sleighs and stock, in a building owned by him at Rockport. Accordingly on the 6th day of December, 1893, he left instructions at the office of F. A. Packard, who was agent of the Commercial Union Insurance Company, and five other companies, including the defendant company. The plaintiff gave no instructions as to what company the insurance should be placed in, this matter being left wholly to the agent. The policy was made out in the Commercial Union Insurance Company, and

the plaintiff on the 16th day of December paid the premium and received the policy of that company, which policy he retained in his possession until two days after the property insured was destroyed by fire, which occurred at one o'clock in the morning of December 19th, which was Tuesday. During that time he had no notice that the company intended or desired to cancel his policy. On December 15th, the Commercial Union Insurance Company wrote the agent to cancel the policy. This letter reached Camden, where the agent resided, on the 16th, which was Saturday, in the evening, and was taken from the office by the agent on Monday the 18th. Upon receiving this instruction to cancel the policy, the agent instructed his wife, who was his clerk, to write a new policy in the defendant company. The agent was in the office in the evening, and finding that nothing had been done in reference to the policy, wrote a "daily report" of the insurance in the defendant company, and it remained in his office until the afternoon of the next day, Tuesday, when the policy in suit was written. After the daily report had been written, but before it was mailed and before the policy was made out or entered in the register, the plaintiff notified the agent that the property insured had been destroyed by fire. When the plaintiff notified the agent of the destruction of the property that Tuesday morning, the agent told him he had just received word from the company to cancel the policy in the Commercial Union. That was all the conversation that was had in relation to the cancellation of the policy. The plaintiff testifies that he went over to the agent's office about eight o'clock, on the morning of Tuesday the 19th, and notified him that it had been burned, and he said he was just reading a letter he had received from the company to cancel the policy. At the time the plaintiff left the agent's office he had no knowledge that any attempt had been made to cancel the policy which he then held upon his property which had then been destroyed, and had no knowledge that any act had been done towards placing the insurance in another company. The policy which the agent wrote in the defendant company on the afternoon of the 19th, and after the plaintiff had given notice of the loss, was ante-dated December 6th, and the record of cancel-

lation of the other policy, December 18th, as of the date when notice was received by the agent to cancel the policy in the Commercial Union, and when the "daily report" was written for the defendant company. Two days after the fire, the policy in suit, in the Insurance Company of North America bearing date December 6th, 1893, was sent to the plaintiff by the agent through a Mr. Andrews, who said he had another policy, and he would take the old one and give the plaintiff a new one, and that it would be all right. The plaintiff testifies that he hesitated about doing it, but at last gave him the first policy and took the new one upon his assurance that it would be all right, and that he would be protected. The record of cancellation was not entered on the register of the Commercial Union until Mr. Andrews returned with the policy from the plaintiff, though the record was dated December 18th, the day before the fire. On the afternoon of Tuesday, the 19th day of December, the agent mailed to the defendant company the daily report which had been written the evening before, informing the company of the insurance, and also in separate envelope notice of the loss.

The premium paid by the plaintiff for the policy in the Commercial Union was transferred to the account of the defendant company, and remitted with other money in the due course of business, and this is still retained by them.

On Dec. 25th, a special agent of defendant company, in reply to the notice of loss, notified the agent that he would come down the next week. The defendant company on learning the facts concerning the loss, making of the policy on the 19th of December and ante-dating it as of the 6th, and the alleged cancelling of the policy in the Commercial Union, disaffirmed the acts of the agent, claiming they were wrong and illegal, and that the Commercial Union was the company liable, and not the defendant.

The plaintiff, as the case shows, has another action pending against the Commercial Union, and has made due proof of loss to that company. In his proof of loss against the defendant company, he states that he was insured in the Commercial Union,—that they claim it was cancelled before or at the time the insurance was

effected in the defendant company, but which claim he states he does not admit nor does he waive or surrender any rights that he may have against that company by filing his proof of loss against the defendant company.

Such, in substance, are the facts upon which the plaintiff seeks a recovery in this action against the defendant company.

We do not think he can maintain this action.

There was a valid contract of insurance existing between the plaintiff and the Commercial Union Insurance Company on and after December 16th, when he paid the premium and received his policy. Up to the time of the fire, the plaintiff had received no notice of the intended cancellation of that policy. He had neither authorized nor requested any other insurance of his property, nor had he requested or assented to a cancellation of his policy in the Commercial Union. By the terms of the policy the company could cancel the policy by giving to the assured five days' notice. No such notice was given, and the policy remained uncancelled and in full force in the hands of the assured on the 19th day of December when the loss occurred and when he notified the agent of the loss. Without such a stipulation, or some stipulation strictly authorizing it, an insurance company cannot cancel a contract of insurance once entered into, except with the assent of the assured. 1 May on Ins. § 67. *Alliance Mutual Ins. Co.* v. *Swift*, 10 Cush. 433.

And when the policy contains such a stipulation, the notice must be unequivocal. It is not enough to give notice of a desire to cancel, or to deliver the policy for cancellation. *Lyman* v. *State Mut. Ins. Co.*, 14 Allen, 329; *Griffey* v. *Ins. Co.*, 100 N. Y. 417.

The only notice ever given by the company that had entered into a contract with the plaintiff was that given on the 15th of December in a letter to their agent. He was not the agent of the assured for the purpose of receiving notice of the cancellation of the policy which he himself had written and delivered to the assured as agent of that company.

A case significantly similar to the one at bar was before the court in New Hampshire in *Stebbins* v. *Lancashire Ins. Co.*, 60 N. H. 65,

and there, as here, the attempt was made to change the risk from one company to another after the contract had become fixed and binding, and without any authority from the plaintiff, and in the course of the opinion the court say: "The right to terminate the insurance upon giving notice and refunding the premium for the unexpired term was reserved in the policy; and it appears that the company, upon being informed of the risk, notified their agents that they preferred not to carry it, and advised that it be placed elsewhere, and that the agents attempted to change the risk and place it in the Lancashire Company. But the act of the agents in cancelling the policy upon their books and writing a policy in the Lancashire Company and forwarding it as a proposed substitute was ineffectual to terminate the contract of the North British Company until notice had been given to the plaintiff or his agent; and no such notice was received by the plaintiff, his agent Barber, or Doolittle, until after the liability of the North British Company had become fixed by the destruction of the property by fire. After the liability of the company had become absolute, notice of their previous election to terminate the risk was of no effect. The North British policy was in force at the time of the fire. *Massa-soit Steam Mills Co.* v. *W. A. Co.*, 125 Mass. 110. The Lancashire policy never became a binding contract. When insurance on the plaintiff's building to the required amount had been secured in the Commercial Union and North British companies, the plaintiff's application had been filled, and no authority remained for placing other insurance upon the property. The Lancashire policy therefore was unauthorized by the plaintiff; and although written in good faith by the authorized agents of the company, and designed as a substitute for the North British policy, it could have no operative force until it was accepted by the plaintiff. It was not an acceptance of a proposition for a contract of insurance, like the case of a policy issued on a previous application, which, as in the cases cited by the plaintiff, takes effect upon the acceptance of the application. As neither the plaintiff nor his agent had any knowledge of the existence of the policy previous to the fire, it was not an existing contract of insurance when the loss happened, and the

subsequent delivery was ineffectual to give it validity." See also *Wilson* v. *New Hampshire Fire Insurance Co.*, 140 Mass. 210.

At the time of his loss, the plaintiff held the policy of the Commercial Union, uncancelled, and in full force, and had a right of action against that company for the amount of his loss.

He had not applied for or assented to any other insurance, had no knowledge that other insurance was contemplated, and had not at the time of loss any right of action against the defendant company.

It is contended in support of this action that by surrendering his policy in the Commercial Union, and accepting the policy in suit, the plaintiff ratified the acts of Packard, and thus on the 21st of December, in making the exchange of policies with Andrews, under the circumstances which we have stated, completed a contract of insurance with the defendant company upon property which had been destroyed three days before.

But taking the testimony of the plaintiff, it negatives the claim of cancellation of his first policy and the acceptance of the one in suit in lieu thereof. More than a month after the alleged cancellation and transfer of risk, in his proof of loss to the defendant company, he states that he does not admit the claim of the Commercial Union that his policy in that company had been cancelled before the loss, nor does he "waive or surrender any rights" that he may have against the Commercial Union. His testimony in relation to what was done when Andrews came to him shows no consent to such cancellation or change of risk, and the most that can be said in relation to it is, that he hesitatingly exchanged policies upon the assurance that "it would be all right, and he be protected." Nor was the plaintiff at the interview with Packard on the morning after the loss when he conveyed notice to him of his loss, in any way notified that his insurance in the Commercial Union was cancelled, or attempted to be cancelled, or the risk changed, and he went away ignorant of any such fact.

We cannot agree to the plaintiff's position that there was a contract of insurance effected between the plaintiff and this defendant company by the act of the agent in writing the "daily report" on

the evening of December 18th.   That would undoubtedly be true
had the plaintiff applied for further insurance.   *Walker* v. *Metro-
politan Ins. Co.*, 56 Maine, 371, 379.   But in this case the agent
had no authority express or implied to effect any insurance for the
plaintiff beyond what had already been completed.   His authority
was to procure for the plaintiff $1,200 insurance in one of the com-
panies which he represented; and having done that to the acceptance
of the plaintiff, his agency, so far as the plaintiff was concerned,
was accomplished, and he had no authority to make further insur-
ance in behalf of the plaintiff.   Nor was it the intention even on
the part of the agent to effect additional insurance.   It was at most
an attempt to transfer a risk from one company to another at the
instance of the company then carrying the risk and without the
consent of the assured.   The attempted cancellation, and the effort
to place the risk in the defendant company were parts of the same
transaction, with no consent of the assured.   Unless the cancella-
tion was valid, the second risk did not attach.   It is not pretended
that the plaintiff was aware of any intention or attempt at cancel-
lation till the morning after the loss occurred.   Until the five days'
notice provided in the policy should be given him, or he should con-
sent to such cancellation, the first policy would remain in force, and
the second would not become operative as a legal subsisting contract.
*Wilson* v. *New Hampshire Fire Insurance Co.*, 140 Mass. 210, 212;
*Stebbins* v. *The Lancashire Insurance Co.*, 60 N. H. 65; *Massasoit
Steam Mills Co.* v. *Western Assurance Co.*, 125 Mass. 110. ·

There was no contract between this plaintiff and the defendant
company at the time the loss occurred.   There was a subsisting
contract between the plaintiff and the Commercial Union.   The
unauthorized attempt on the part of the agent of the defendant
company to make such a contract by entering in his "daily report"
the memorandum of such contract, was not enough.   The contract
of insurance is to be tested by the principles applicable to the making
of contracts in general.   The terms of the contract must have been
agreed upon.   This necessarily implies the action of two minds,—
of two contracting parties.   If it is incomplete in any material
particular, or the assent of either party is wanting, it is of no
binding force.

Thus, in the case of *Insurance Co.* v. *Young*, 23 Wall. 85, 107, the Supreme Court of the United States, in speaking of the contract of insurance where a question similar to the one under consideration arose, say: " The company assented to the policy, but the applicant never did. The mutual assent, the meeting of the minds of both parties, is wanting. Without it there is none, and there can be none." *Insurance Co.* v. *Ewing*, 92 U. S. 377, 381.

In this case, the action of the agent in the transaction relative to the attempted change of risk to the defendant company, was entirely ex parte. If we assume that he was acting with authority from the company, it was then no more than a proposition which had not been made known to the plaintiff. To give it validity required his knowledge and his consent. At the time of the loss knowledge had not been conveyed to him, and his acceptance had not been given. The rights and liabilities of the parties are to be determined by their legal status at the time of the loss. It is inconceivable that the defendant company can be held liable for indemnity against loss when no contract for indemnity existed at the time the loss occurred.

And if the property had been burned before any contract was entered into with the defendant company, even if we assume such contract to have been afterwards made, that fact was known to the agent, and the defendant company would not be liable; the property must be in existence to render a contract of insurance valid. *Stebbins* v. *The Lancashire Ins. Co.*, 60 N. H. 65; *Mead* v. *Phenix Ins. Co.*, 158 Mass. 124, 126.

Stress is laid upon the fact that the defendant has received and retained the premium paid by the plaintiff. But the plaintiff has never paid any premium to the defendant company. ' He paid his premium to the Commercial Union when he received his policy under an insurance contract entered into between him and that company. He has paid no other premium. The money so paid became the money of the Commercial Union. If the agent, in order to carry out his plan has included any portion of that amount in a lump sum remitted by him to the defendant company, that matter must be adjusted between the two companies. Such a scheme in

the face of the express disaffirmance of the transaction, both by the defendant company and the plaintiff, cannot place this risk where it does not otherwise belong.

*Judgment for defendant.*