JOHN R. COTTON, Administrator, Appellant v. THE SOUTH-WESTERN MUTUAL LIFE INSURANCE COMPANY.

**Contract of Re-insurance** Where an insurance company assumed all the liabilities and contracts of another company, and issued an invitation to all the members of the latter company to exchange policies for those of the reinsuring company; and it was shown that the reinsurer issued ten different kinds of policies at different rates, a surrender of a certificate of the original insurer, with a request for a policy to the reinsurer, does not constitute a contract for insurance.

**Review on Appeal:** PRESUMPTIONS FOR JUDGMENT BELOW. Where there are any grounds shown in the record on which the trial court's rulings can be sustained, its judgment will be affirmed, though it may have rested its holding on some other foundation.

*Appeal from Wapello District Court.*—HON. ROBERT SLOAN, Judge.

TUESDAY, OCTOBER 15, 1901.

THE petition recites that plaintiff intestate, E. M. Cotton, held a certificate of life insurance in the V. A. S. Security Life Association for $2,000; that by written contract between said V. A. S. Security Life Association, which, for brevity, we shall hereafter designate as the "Security Company", and the defendant, the latter accepted, on consideration, a transfer of the membership of the former, and adopted its contracts, certificates, and policies, and bound itself to perform all the terms and conditions thereof. It is further charged that, by a circular issued later, defendant company gave the members of the Security Company, including plaintiff's intestate, the option of retaining their old certificates, or of surrendering the same and receiving therefor policies in defendant company in the form issued by it; that plaintiff's intestate on May 7, 1898, surrendered his certificate and demanded a policy from defendant, which was refused. This action is brought at law to recover the insurance money claimed to be due. After the evidence was in, on defendant's motion the court instructed the jury to find for it. This was done, and from the judgment thereon in defendant's favor for costs plaintiff appeals.—*Affirmed.*

*McNett & Tisdale* for appellant.

*Clark & McLaughlin* for appellant.

WATERMAN, J.—The material part of the contract of reinsurance referred to is as follows: "The said Southwestern Mututal Life Association further agrees that it will, and hereby does, adopt as its contracts, certificates, and policies each and every certificate or policy issued by the Security Life Association, and which shall be in force, as shown by the books of said Security Life Association, at 12 o'clock noon on the 31st day of December, A. D. 1897. It further agrees that it will perform, all and singular, the terms and conditions of each and

every certificate and policy as specified therein, and in the amended and substituted articles of incorporation of said Security Life Association and amendments thereto." In a circular issued about the time of the execution of this contract, signed by the president of the defendant company, and sent to the certificate holders of the Security Company, the following offer was made: "To all members of the Security Life will be given the privilege of exchanging their policy for the form of contract issued by the Southwestern, without medical examination, change of rate, or any extra expense whatever. For many reasons it might be desirable to exchange policies, but it is entirely optional with the member. Whether an exchange is made or not, each member will be received into the home of the Southwestern, and welcomed as one of its large family, and will receive the same courteous and considerate treatment that has always during the past sixteen years been accorded its members." Something less than six months after the issuance of this circular plaintiff's intestate delivered his certificate in the Security Company to an agent of defendant company, and requested a policy of the latter in exchange. The certificate, with notice of this request, was transmitted to and received by defendant. This policy was never delivered. The present action is founded upon the policy or contract to which it is claimed the assured was entitled by reason of the foregoing state of facts.

The certificate in the Security Company entitled the holder to the avails of an assessment, and the right of action upon it would be in equity, to compel the making of such an assessment. Under the evidence it appears that defendant had issued to some certificate holders of the Security Company, with whom, under its offer, it effected an exchange, a policy in the ordinary form providing for the payment absolutely of the sum of $2,000, and that this was its customary, and, so far as appears, only, form of insurance. Section 1789 of the Code, contained in a chapter relating to "stipulated premium and assessment life insur-

ance associations," provides: "No association, organized or operating under this chapter, shall issue a certificate of membership to any person under fifteen nor over sixty-five years of age. * *" It seems that E. M. Cotton was 69 years of age when the claimed contract of reinsurance was made. He was but 51 years old, however, when he obtained the certificate in the Security Company. The motion to instruct the jury in defendant's favor was based upon 10 distinct grounds. It was sustained as to the third and fourth grounds, and overruled as to the others. The grounds upon which it was sustained are as follows: "(3) The defendant was prohibited by law from accepting members over sixty-five years of age, as was the applicant, E. M. Cotton, at the time of the alleged contract. (4) This suit is based upon a right to have a contract of insurance, and it is the duty of the plaintiff to show in his main case that the applicant was of insurable age (that is, below the age of sixty-five years) when the application was made." The tenth ground, which was overrruled, was in these words: "(10) The articles provide particularly as to the manner of giving notice of assessment, and the proof is undisputed that these requirements were carefully followed, and that E. M. Cotton had become lapsed when application was made." The fifth ground of the motion, which appellant asserts was also overruled, was in these words: "There is no completed application shown in the evidence. It is in proof that the defendant had ten different kinds of policies, all differing in cost and form, and there is a failure to show which kind E. M. Cotton desired." It is contended by appellant that appellee can secure no benefit on this hearing from either of the matters set up in those grounds of the motion which were overruled, because it neither excepted to nor appealed from such ruling. It may be, if there is any ground shown in the record upon which the court's ruling can be sustained, we should give it support, although the trial court may have rested its holding upon some other foundation. *See Wise v. Wilds,* 77 Iowa, 586-

590, and cases cited therein. But the evidence as to the lapse of plaintiff's certificate was in conflict, and the motion to direct a verdict on the tenth ground was properly overruled. Something more may be said as to the fifth ground. Although it appears also as overruled, we think the court considered it, and based his conclusion to direct a verdict in part upon it; for in his direction to the jury, which seems to have been in writing, we find this language: "The court holds that the undisputed evidence shows that there never was any contract made to change the policy to a policy of the ordinary form of policy in defendant company. * * *" We have, therefore, and for a double reason, properly before us the question whether there was a contract between plaintiff's intestate and defendant company for an exchange of policies. Let us assume that such an agreement would be valid, and that defendant might have lawfully obligated itself to issue a new policy to Cotton, notwithstanding he had passed the age limit fixed by statute. Such an assumption has some support in *Cathcart v. Association,* 111 Iowa, 471; and *Seymour v. Life Co.,* 54 Minn. 147, (55 N. W. Rep. 907). However, we do not decide the question, for it is not necessary that we should do so. We dispose of the case on another ground. It will be noticed that the offer or proposition signed by the president of defendant company and sent to the certificate holders of the Security Company is very indefinite. No specific terms are given, and no particular kind of policy is designated. As the evidence shows, the company issued 10 different kinds of policies at different rates of premium, and it was manifestly important, as an element of a contract for a policy, that the kind of a one desired should be agreed upon. We construe this so-called offer as no more than an invitation to take out new policies, leaving the contract to be completed by future negotiations When Cotton surrendered his original certificate, he accepted the invitation, but his acceptance did not make a contract for a policy. The general rule with relation to agreements for insurance is that they must

include all the elements and terms essential to a completed contract. Nothing must be left for future negotiations and determination. Ostrander, Insurance, 10-20; *Sater v. Insurance Co.,* 92 Iowa, 579; *Taylor v. Insurance Co.,* 107 Iowa, 275; *Piedmont and Arlington L. Insurance Co. v. Ewing,* 92 U. S. 379, (23 L. Ed. 610); *Commercial Fire Ins. Co. v. Morris,* 105 Ala. 498, (18 South. Rep. 34); *Clark v. Insurance Co.,* 89 Me. 26, (35 Atl. Rep. 1008, 35 L. R. A. 276); *Hartshorn v. Insurance Co.,* 15 Gray, 240; *Strohn v. Insurance Co.,* 37 Wis. 625, (19 Am. Rep. 777); *Davis Lumber Co. v. Caledonian Ins. Co.,* 94 Wis. 472, (69 N. W. Rep. 156). True, some of the terms of the agreement may be supplied by implication, as that the policy shall be in the usual form issued by the company on such risks. *Barre v. Insurance Co.,* 76 Iowa, 609, and cases cited therein. But in none of the cases wherein this court has held that a contract for a policy could be enforced were the facts similar to those here involved. It is not shown in the *Barre Case,* nor in any of those cited in that opinion, that the company issued more than one form of policy on the kind of risk insured, or had more than one rate of premium therefor. We have in the case at bar no agreement as to the form of the policy or as to the rate of premium, and for this reason we think there was no contract for a policy, and because of this the judgment of the trial court must be sustained. Some questions presented relate to rulings on the admission of testimony, but they are not controlling, and need no further notice.—AFFIRMED.