THE CELINA MUTUAL CASUALTY COMPANY
*v.* BALDRIDGE.

[No. 26,943. Filed November 5, 1937. Rehearing denied January 18, 1938.]

*Connor D. Ross, George A. Henry, Leo L. Kriner,* and
*V. Ed Funk,* for appellant.

*Cloe, Cloe, Campbell & Cloe, Fae W. Patrick, Thomas*

*L. Webber, Frank A. Symmes,* and *Owen S. Boling,* for appellee.

*Edward P. Gallagher,* amicus curiae.

FANSLER, C. J.—This is an action to recover $350 for the destruction of appellee's automobile under a contract of insurance. The policy is dated July 18, 1930, but it was not actually issued until after the automobile was destroyed on November 25, 1930.

The appellant answered in general denial, and in several paragraphs of affirmative answer alleged that at the time the policy was issued the plaintiff had no insurable interest in the automobile covered by the policy; that the policy was not issued until six days after the accident, and that it was procured through the connivance and collusion of the plaintiff and the local agent of the defendant, who willfully withheld and concealed the information that the car had been destroyed; that no consideration had ever been paid for the policy; that at the time the policy was issued there was in full force and effect another policy of insurance covering the automobile, with the American States Insurance Company, and that the existence of that policy was willfully withheld and concealed, in violation of the terms of the contract; that the full amount of the premium had not been paid, but that a rebate was issued by the agent, by reason of which the policy was illegal and void from its inception; that the appellee did not have full and complete title to the automobile, which fact was fraudulently misrepresented.

There was a reply in general denial, a trial by jury, and a verdict for $350, the full amount demanded, and judgment accordingly.

Under an assignment that the court erred in overruling the motion for a new trial, error is predicated upon the giving and the refusal to give certain instructions, the admission of certain evidence, and the suffi-

ciency of the evidence to sustain the verdict and judgment.

It appears without controversy that Mayme Brishaber, who wrote insurance as a "side-line," was licensed and authorized to sell insurance for the American States Insurance Company, the appellant, and other companies. In 1929, the appellee took over the car in question from his brother, who was purchasing it on installment payments. The appellee continued the payments. In January, 1930, he arranged with Mrs. Brishaber for insurance on the car, and through her a policy in the American States Insurance Company was issued to him, covering his car for six months, for which he paid her the premium. On July 2, 1930, at his request, his policy was renewed in the American States Insurance Company. Shortly thereafter a policy of the American States Insurance Company was delivered to him, which he continued to hold in his possession until after the collision which destroyed his car on the 25th of November following. On August 7th he made out a check, payable to Mrs. Brishaber, for the premium, and left it at the bank for her, and she received it. About September 20, 1930, he had notice from the American States Insurance Company that his policy had been canceled for nonpayment of premium. He went to the bank and found that his check had been marked "paid," and continued to hold the policy, assuming that the error would be corrected. After the damage to his car, he went to the American States Insurance Company and demanded settlement, and afterwards brought a suit, which he dismissed upon payment of $150, which it is contended here was not a compromise and settlement, but a "covenant not to sue." But we need not consider this question. After the policy in the American States Insurance Company was issued, appellee did not see Mrs. Brishaber, or talk to her, until after the accident

which destroyed his car. At the time of the accident appellee believed that he was insured with the American States Insurance Company, and had no knowledge of any other insurance. He intended the check, which he gave the agent, as payment for the premium of the American States Insurance Company policy. After the American States Insurance Company told him that he was not insured with it (relying upon its cancellation for nonpayment of premium, which Mrs. Brishaber had never forwarded to it), he called Mrs. Brishaber on the telephone. She then told him that she had insured him in the appellant company. Mrs. Brishaber testified that she renewed the appellee's policy with the American States Insurance Company on July 2, 1930, but that she afterwards canceled it; that on July 19, 1930, she decided to change appellee's insurance to the appellant company because the rates were lower; that she wrote an application for the insurance in the appellant company on that date, and wrote her check for the amount of the premium; that she put the application and check in a stamped envelope, and addressed it on that date to appellant, and put it in her brief case with a number of other letters; that she first discovered that she had not mailed the application and check when appellee called her and told her about the accident, and asked about the insurance; that she then looked in her file and could not find the daily report of insurance for appellant; that while appellee was on the telephone talking to her she discovered the envelope containing the application and check in her brief case, where it had been since July 19, 1930. She then immediately mailed them to the company, with a letter explaining that they had been mislaid since July 19th. She did not, however, advise the company at that time of the damage to and destruction of the car. Upon receipt of her letter and check, and without knowledge of the destruction of the car, the

company prepared and sent her the policy sued upon, dated as of July 19, 1930. She then mailed a report of loss to the appellant, together with a "retention premium." She testified that it was her practice to remit premiums to the American States Insurance Company within thirty days, and to the Celina Mutual Casualty Company within forty-five days, and she did not explain why she wrote her own check for the policy in the appellant company on July 19th, the date the application was prepared.

It thus appears without controversy that the appellee held in his possession a policy of insurance, issued by the American States Insurance Company, which was in full force and effect from July 2, 1930, to and including September 20, 1930, when he had notice from the American States Insurance Company that his policy had been canceled for nonpayment of premium. Whether his policy continued in force, because of the premium having been paid to the agent, as he insisted it did to the extent of bringing a suit and receiving some payment from the American States Insurance Company, need not be considered. It is sufficient that on July 19th, when Mrs. Brishaber says she undertook to cancel his policy and procure him a new one in the appellant company, she had no authority to act for him, and he had no knowledye of her action, and she did not in fact do anything toward procuring a policy for him in the appellant company on that date, so that no contract was then consummated. Nothing further was done concerning a policy in the appellant company until after the property sought to be insured was destroyed. The company then issued its policy dated back to July 19th, without knowledge that the property sought to be insured was already destroyed.

To create a contract of insurance there must be an agreement between the insurer and the insured. There

must be a meeting of the minds. It is clear that if there was a contract between appellant and appellee it was made either on July 19th or after the destruction of the property. There was no contract made on July 19th, because appellee had not authorized or requested the issuance of insurance, and had no knowledge that a contract with appellant was contemplated. He then had a policy in full force and effect with the American States Insurance Company, and one policy of insurance is all that he had authorized Mrs. Brishaber to procure for him. He had not authorized her to change his insurance, and she could not bind him by a cancellation without notice to him, so that what she may have decided to do regarding the cancellation was of no effect. In *Stebbins* v. *Lancashire Insurance Co.* (1880), 60 N. H. 65, 70, a case similar in many respects to the one at bar, it is said: "The Lancashire policy never became a binding contract. When insurance on the plaintiff's building to the required amount had been secured in the Commercial Union and North British companies the plaintiff's application had been filled, and no authority remained for placing other insurance upon the property. The Lancashire policy therefore was unauthorized by the plaintiff; and, although written in good faith by the authorized agents of the company, and designed as a substitute for the North British policy, it could have no operative force until it was accepted by the plaintiff. It was not an acceptance of a proposition for a contract of insurance, like the case of a policy issued on a previous application, which, as in the cases cited by the plaintiff, takes effect upon the acceptance of the application. As neither the plaintiff nor his agent had any knowledge of the existence of the policy previous to the fire, it was not an existing contract of insurance when the loss happened, and the subsequent delivery was ineffectual to give it validity."

"An agent of an insurance company has no authority to insure property already destroyed; and a policy written and intended as a substitute for a subsisting policy in another company, but not delivered, and of which the assured has no knowledge until after the property is destroyed by fire, is not a valid contract of insurance." *Kerr* v. *Milwaukee Mechanics' Insurance Co.* (1902), 117 F. 442, 447, and cases there cited; *City of New York Insurance Co.* v. *Jordan et al.* (1922), 284 F. 420.

A direction authorizing an insurance agent to procure a policy of insurance is exhausted by the procuring of one policy, and confers no authority to afterwards cancel and procure other or different policies. See cases above cited, and *Jernigan* v. *National Union Fire Insurance Co. et al.* (1932), 202 N. C. 677, 163 S. E. 762; *Wilson* v. *New Hampshire Fire Insurance Co.* (1885), 140 Mass. 210, 5 N. E. 818.

In *Clark* v. *Insurance Co. of North America* (1896), 89 Maine, 26, 35, 36, 35 Atl. 1008, 1011, it is said:

"The contract of insurance is to be tested by the principles applicable to the making of contracts in general. The terms of the contract must have been agreed upon. This necessarily implies the action of two minds,—of two contracting parties. If it is incomplete in any material particular, or the assent of either party is wanting, it is of no binding force. . . .

"In this case, the action of the agent in the transaction relative to the attempted change of risk to the defendant company was entirely *ex parte*. If we assume that he was acting with authority from the company, it was then no more than a proposition which had not been made known to the plaintiff. To give it validity required his knowledge and his consent. At the time of the loss, knowledge had not been conveyed to him, and his acceptance had not been given. The rights and li-

abilities of the parties are to be determined by their legal status at the time of the loss. It is inconceivable that the defendant company can be held liable for indemnity against loss when no contract for indemnity existed at the time the loss occurred.

"And if the property had been burned before any contract was entered into with the defendant company, even if we assume such contract to have been afterwards made, that fact was known to the agent, and the defendant company would not be liable. The property must be in existence to render a contract of insurance valid."

It seems clear that there never was a contract between the appellant and the appellee, or even a thought of such a contract, except in the mind of the local agent, until after the property to be insured was destroyed. There can be no contract without knowledge of the contracting parties. And if the parties can be said to have entered into a contract after the destruction of the property, and with full knowledge of the fact, and it is clear that the insurance company would not have issued the policy with knowledge, the contract is unenforceable, since an insurance company has no power to insure a thing which has already been destroyed.

It was error to overrule appellant's motion for a new trial.

Judgment reversed, with instructions to sustain the motion for a new trial, and for further action not inconsistent herewith.

### ON PETITION FOR REHEARING.

FANSLER, J.—After the filing of the opinion in this case, appellee filed a motion to dismiss the appeal upon

the ground that the judgment appealed from is not final. Prior to the decision of the case, appellee filed a petition for and procured an extension of time to file briefs. Petitions for extensions of time to appellees must show that all motions to dismiss have been filed. Appeals will not be dismissed upon motion of parties over whom the court has acquired jurisdiction after the decision of the case, nor after the party has procured an extension of time to file briefs on the merits.

It is contended by appellee that the question is jurisdictional, and that, unless the judgment appealed from is final, the court obtains no jurisdiction. In the cases cited to support this view, it clearly appears that the judgment was not final, and that all of the parties to the judgment or record had not been brought before this court. *Champ et al.* v. *Kendrick, Trustee* (1892), 130 Ind. 545, 30 N. E. 635; *Michigan Mutual Life Insurance Co.* v. *Frankel* (1898), 151 Ind. 534, 50 N. E. 304; *Enmeier et al.* v. *Blaize et al.* (1932), 203 Ind. 303, 179 N. E. 783. It is clear that a decision of this court is not binding upon one who is not brought before the court by notice so that the court can acquire jurisdiction of the person, and, as to him, the proceedings are void. But a ruling of this court is not void as to parties before the court. This court has jurisdiction to determine whether a judgment appealed from is final as between the parties before it, and, unless the question is timely presented, it is waived, and the judgment is deemed final. *White* v. *White* (1935), 208 Ind. 314, 194 N. E. 355, 196 N. E. 95.

Appellee's contention that the judgment is not final is based upon the fact that appellant filed below what is denominated "ninth paragraph of answer," which begins: "Defendant Celina Mutual Casualty Company for its ninth and last paragraph

of answer to plaintiff's complaint answers by way of cross-complaint and says that." The answer then sets up the facts concerning the issuance of the policy, and alleges that the defendant immediately cancelled the policy and returned the premium, and that the plaintiff accepted the return and surrendered the policy. There is a prayer that the policy be ordered cancelled and declared void. At the time the action was brought, and at the time this pleading was filed, the policy in question had expired, as shown by the pleading. The facts alleged constitute an answer, and the pleading was treated as an answer in the instructions of the court. As suggested by appellee, "It is not the name but the facts stated that determine the character of a pleading." The verdict and judgment in favor of appellee effectually barred any possibility of a recovery by appellant in another action upon the facts which were the basis of the pleading in question. The verdict and judgment finally disposed of the entire controversy.

Appellee has filed a petition for rehearing in which it is vigorously contended that this court has misapprehended or misunderstood the facts in the case. It is said in the brief: "This court erred in holding and deciding that the evidence in this cause shows as a matter of law that on the 19th day of July, 1930, appellee had a policy of insurance in full force and effect with the American States Insurance Company." It is then asserted that this "was a question of mixed law and fact." The brief then quotes from the original opinion as follows: "It appears without controversy that Mayme Brishaber, who wrote insurance as a 'sideline,' was licensed and authorized to sell insurance for the American States Insurance Company, the appellant, and other companies." It is then asserted that: "The evidence as appears from the record conclusively shows that Mayme Brishaber was not licensed to sell insurance

for the American States Insurance Company for the year 1930." This is urged in support of the contention that the court erred in deciding that there was a policy in force, presumably because Mrs. Brishaber had no authority to act for the company. The words "licensed" and "authorized," as used, are synonymous. But, even if she had no authority to act, but acted, and the company acquiesced and issued the policy, it was bound, and the policy was in effect. Mr. Gallahue, the president of that company, testified: "In 1930 we did not renew her license as an agent as she stated she thought she could get a license with another company. We said that we would let her place policies with us until she could get another connection. We cancelled her out in the fall of 1930 because she switched her business to another company during the summer of 1930." It is not disputed that Mrs. Brishaber ordered the policy from the company or that it was delivered to her. She testified that she had it in her possession, but that she did not remember whether she delivered it to appellee. Appellee testified that it was delivered to him, and this is not disputed. Complaint is also made of the following statement in the opinion: "On July 2, 1930, at his" (appellee's) "request, his policy was renewed in the American States Insurance Company. Shortly thereafter a policy of the American States Insurance Company was delivered to him, which he continued to hold in his possession until after the collision which destroyed his car on the 25th of November following." It is asserted that there is evidence tending to show that the policy in the American States Insurance Company was issued without request, other than that Mrs. Brishaber "sent his file card into the Indianapolis office," and the policy was sent direct by mail from the home office, and that at the time Mrs. Brishaber made the contract with the Celina Mutual Casualty Company on July 19th, she had no

notice from the American States Insurance Company that a policy had been written by it for appellee. It is of no importance whether an application or merely a file card was sent to the company, or whether Mrs. Brishaber knew whether the policy was delivered. But the evidence shows without dispute that appellee requested the renewal; that the policy was issued and delivered to him; and that Mrs. Brishaber's records showed it in force from July 2nd until she made a notation of cancellation on July 19th. She testified positively that she had the policy in her possession, and that she "cancellel it out" in order to write the insurance in the Celina Casualty Insurance Company. It is also suggested that the American States Insurance Company had no record of any application being made for the issuance of its policy. It is undisputed that that company issued the policy, and that its record showed the issuance of the policy.

The policy contained a provision that, if the premium was not paid at the home office on or before August 1, 1930, the policy should lapse. Whether this provision was effective to strike down the policy after August 1st cannot be decided in a case in which the company is not a party. It is clear that it was effective until the first of August. The president of the company testified as follows, with reference to notice upon the lapsing of a policy: "It was the natural conclusion that if a person made a payment and the agent doesn't pay it to the company and this is cancelled, the policy is cancelled by registered mail, the assured advises the company. In this particular case after the policy lapsed we sent out a registered cancellation notice and we didn't have any inquiry from Mr. Baldridge that the premium had been paid and we assumed that it hadn't." Whether payment to the agent was effective to continue the policy in force, or whether there were other defenses

that the company might have made against the policy, could only be determined in an action between appellee and the American States Insurance Company. But the evidence is clear and unmistakable that appellee believed the policy was in effect up to and including the date of the accident, and there can be no question that he intended the premium he paid to be in payment for that policy. Pursuing his belief and contention, he brought a suit against the company, alleging in his complaint that the policy was at all times in full force and effect; and, coerced by the pending action, the company paid him $150. Neither Mrs. Brishaber nor any one else had authority to surrender or cancel appellee's right to insist as against the American States Insurance Company that his policy was in full force and effect from the day it was issued to and including the day of his loss. He believed and asserted that it was so in force, and in a trial of his case against that company it might have been adjudicated to have been in force. It is clear that he was not making any claim that he had a policy with appellant, and did not know that there was anything to suggest such a thing until after the accident. It would be unconscionable under the facts to permit him to successfully contend here that "this contract" (with the American States Insurance Company) "was never completed so as to become an effective contract," and "that there was a meeting of the minds" (between appellant and appellee) "on July 19th is borne out by the evidence." There is not one scintilla of evidence that appellee ever considered the question of insurance with appellant on July 19th, or on any other date until after his property was destroyed. There is ample undisputed evidence that he told Mrs. Brishaber "to renew" his policy. The one he had was with the American States Insurance Company, and a renewal would naturally imply another with the same company; that she

did renew the policy in the same company; that it was delivered to him, and that he held it until after the accident; that when he paid the premium, he must have intended it to pay for the policy he had, since he knew of no other; that he continued to believe and assert that he was insured by the policy; that he never authorized Mrs. Brishaber to get any other or different policy, and only authorized her to procure one policy; that he never was advised by her that she had any thought of cancelling the policy which she had procured for him, and insuring him in the appellant company. His mind could not have met with appellant upon the question of an insurance contract on the 19th of July, or at any other time before his property was destroyed. Mrs. Brishaber's authority to procure insurance for him was exhausted when she procured the policy in the American States Insurance Company, as pointed out in the principal opinion. A more careful examination of the evidence should convince appellee that the court has not misapprehended the facts.

The motion to dismiss the appeal is dismissed, and the petition for rehearing is denied.