**PEKIN INSURANCE COMPANY,**
**Plaintiff-Appellant,**

v.

**Jimmie WHEELER, Virginia Wheeler, Donald Greene, Edith Greene, Preferred Risk Insurance Company, and Celina Mutual Insurance Company, Defendants-Appellees.**

No. 1–685A161.

Court of Appeals of Indiana,
First District.

May 27, 1986.

Rehearing Denied July 11, 1986.

James R. Fisher, John F. Prescott, Jr., Ice, Miller, Donadio & Ryan, Indianapolis, for plaintiff-appellant.

James E. Bourne, Richard A. Bierly, Wyatt, Tarrant, Combs & Orbison, New Albany, Ind., George M. Streckfus, Jeffersonville, Ind., for Celina Mut. Ins. Co.

NEAL, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant, Pekin Insurance Company (Pekin), appeals from an adverse judgment issued by the Jackson Circuit Court which ruled that a policy of insurance issued by Celina Mutual Insurance Company (Celina) to Jimmie and Virginia Wheeler was void from its inception. We affirm.

### STATEMENT OF THE FACTS

On April 11, 1978, Jimmie Wheeler was involved in an automobile accident with Mr. and Mrs. Green. Prior to this accident, Virginia Wheeler and her daughter had

automobile insurance purchased from Republic Mutual Insurance Company (Republic), a member of the Celina group, through McClain Insurance Company (McClain), an independent insurance agency. The policy had an expiration date of March 1, 1978. On February 13, 1978, an employee of McClain sent a memo to Celina and inquired whether it would issue a policy concerning the Wheelers to become effective at the expiration of the Republic policy. By reply memo dated February 21, 1978, Celina ·suggested that an application be submitted but stated that acceptance would be dependent upon the results of a driving record check. Meanwhile, in February, Virginia Wheeler went to the Martin & Bowling Insurance Agency, an agent of Pekin, for the purpose of applying for insurance and consolidating their coverage which would include coverage of all vehicles owned by the Wheelers and coverage of Jimmie Wheeler when operating such vehicles. This policy was issued on February 28, 1978. On or about March 10, 1978, Celina indicated it received an application for insurance for the Wheelers which purported to bear Jimmie's signature. Celina then issued its declaration page on March 13, 1978, confirming the issuance of its policy insuring the Wheelers for the period March 1, 1978 to June 1, 1978.

Celina's investigation of Jimmie Wheeler's driving record subsequently revealed that he had two convictions for driving while intoxicated, two convictions for speeding, and a conviction for driving while suspended. Celina then notified its agent on March 22, 1978, that it would have to take action to cancel the policy, and on March 31, 1978, Celina mailed its Notice of Cancellation which was to be effective at 12:01 a.m. on April 20, 1978.[1]

During the course of this time, Celina had not yet received any premium payment on the policy. Since the application did not indicate that the agency account was to be billed, Celina billed the premiums directly to the policyholder. Virginia Wheeler did not recall ever receiving the bill. Celina normally would have sent a notice of cancellation for non-payment of premiums by April 2, 1978, but declined to do so since cancellation for other reasons had already been in progress.

It wasn't until August 27, 1982, when Pekin filed an Amended Complaint against Celina that Celina first discovered the application purporting to bear Jimmie Wheeler's signature had not been signed by either of the Wheelers. Without any explanation, someone from the McClain agency submitted the application to Celina on his own ·initiative, signing Jimmie Wheeler's name on the application. The Wheelers had no knowledge of this application for insurance, never requested it, never authorized it, were never advised of it, and never intended to continue insurance with Celina or for Celina to provide coverage to Jimmie. Upon hearing these facts, Celina immediately filed a counterclaim against Pekin and cross-claims against the other named defendants seeking a declaratory judgment that Celina's policy issued to the Wheelers was void from its inception.

Pekin brought its suit for declaratory judgment to determine coverage of its policy, Celina's policy, and Preferred Risk Insurance Company's policy. As relevant to this appeal, the trial court, after hearing evidence, entered its special findings of facts, conclusions of law, and judgment wherein it held that no coverage existed on Celina's policy. It found that the application for insurance was not executed by the Wheelers, nor by any person with the Wheelers' authority; that neither the Wheelers, nor anyone else paid any premiums; that under the facts of the case waiver and estoppel is inapplicable to bar Celina's defense; that there was no ratification of the application by the Wheelers or Celina; that the issuance of the policy did not result from any meeting of the minds be-

---

1. One of the issues raised by Pekin claims Celina waived its right to void the policy by issuing this prospective notice of cancellation; however, IND. CODE 27-7-6-5 mandates that twenty days notice of cancellation be given except for the non-payment of a premium. At this point, Celina's cancellation was based on Jimmie's driving record.

tween the Wheelers and Celina; and that the policy was not intended as a gift to the Wheelers.

## ISSUE

Pekin raises four issues in its appellate brief but concedes that the threshold issue is "whether an automobile liability insurance policy is void ab initio solely because requested by an unauthorized agent." Since we hold Pekin cannot overcome this threshhold issue, we need not address the remaining issues.

## DISCUSSION AND DECISION

It has long been held in Indiana that insurance policies are governed by the law of contracts. *Celina Mutual Casualty Co. v. Baldridge* (1937), 213 Ind. 198, 10 N.E.2d 904, *reh. denied,* 213 Ind. 198, 12 N.E.2d 258; *Evans v. National Life Accident Insurance Co.* (1984), Ind.App., 467 N.E.2d 1216; *Asbury v. Indiana Union Mutual Insurance Co.* (1982), Ind.App., 441 N.E.2d 232. To create a contract of insurance there must be an agreement between the insurer and the insured. *Baldridge, supra; Asbury, supra. See Cincinnati Insurance Co. v. Mallon* (1980), Ind.App., 409 N.E.2d 1100; *Stockberger v. Meridian Mutual Insurance Co.* (1979), 182 Ind.App. 566, 395 N.E.2d 1272. The agreement must also include a meeting of the minds between the insurer and the insured. *Baldridge, supra.* This court seeks to ascertain and enforce the intent of the parties to the insurance contract. *Asbury, supra; Stockberger, supra.* These principles are reiterated in 16 *I.L.E. Insurance* Sec. 85 (1959) which was relied upon by the trial court in ruling against Pekin:

"To create a contract of insurance, there must be an agreement between the insurer and the insured, and a meeting of the minds. The minds of the parties to the contract must have met upon the essential elements of the contract, such as the subject matter, the risk insured against, the amount, the duration of the risk, and the premium. If it is incomplete in any material particular, or the assent of either party is wanting, it is of no binding force." (Footnotes omitted.)

In the case at bar, it is undisputed that there was never an agreement or a meeting of the minds on any of the essential elements of the alleged contract between the insurer, Celina, and the insured, the Wheelers. The Wheelers never intended to apply for the Celina policy in question, never had knowledge of the policy in question, and never authorized McClain to apply for the policy. From these facts it is clear that no policy of insurance between Celina and the Wheelers ever came into existence.

Pekin tries to circumvent these clear and longstanding principles of law by alleging that the facts of this case create a new issue. It argues that a contract entered into between a third party and an insurance company for the purchase of an automobile liability policy in the name of another should be valid, and that it was Celina's duty to ascertain the extent of McClain's authority before dealing with him. With this basis, it argues there was a meeting of the minds between Celina and the "applicant," McClain. Not only are Pekin's arguments unavailing, but its classification of McClain as the applicant is clearly wrong. The application was made out to the Wheelers, and although a forgery, Jimmie Wheeler's signature was on the application, and the forged application contained fraudulent misrepresentations about Wheeler's driving record. Celina was entitled to believe it was dealing with a bona fide applicant. Therefore, since no contract of insurance ever came into existence, Celina is not bound.

Since no contract of insurance ever came into being, all of the other arguments advanced by Pekin revolving around recission, failure of consideration, and waiver or estoppel are not valid. It is well settled that in Indiana the doctrines of waiver and estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all. *Kentucky Central Life & Accident Insurance Co. v. White* (1939), 106 Ind.App. 530, 19 N.E.2d 872; *Travelers Insurance Co. v. Eviston* (1941), 110 Ind.

App. 143, 37 N.E.2d 310. *See Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 363 N.E.2d 985. Additionally, the third party beneficiary theory must fail because McClain had no insurable interest in the subject matter of the policy. *See* 16 *I.L.E. Insurance* Sec. 71 (1959); *Ohio Farmers Insurance Co. v. Lantz* (1957), 246 F.2d 182, *cert. denied,* 355 U.S. 883, 78 S.Ct. 151, 2 L.Ed.2d 113.

For the above reasons, this judgment of the trial court is affirmed.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.