## 9234

### McCORMACK v. EQUITABLE FIRE INS. CO.

(86 S. E. 1059.)

INSURANCE—ACTION ON POLICY—DEFENSES.—Insured, who applied to an agent for a policy of fire insurance and paid the premium asked, and received a policy in defendant company, which on March 9th instructed its cancellation, and who on March 11th, and before the five days' notice of the cancellation of defendant's policy had expired, received a policy in another company in substitution, and who held both policies at the time of the loss, and stated that he had no objection to returning defendant's policy and expected to do so and to take the policy in the other company, and who thereafter sued the other company and, after issue joined, compromised his suit against it on payment of $250 on the $800 policy, knowing that both companies were not liable to him, thereby ratified the act of his attorney in bringing the suit, and conclusively elected to accept its policy in place of defendant's, and released any claim under the same.

Before PRINCE, J., Columbia, March, 1914. Affirmed.

Action by G. W. McCormack against Equitable Fire Insurance Company. From judgment for defendant, plaintiff appeals. The facts are stated in the opinion.

*Messrs. E. J. Best* and *W. Anderson Clarkson,* for appellant, cite: *As to construction of release given by appellant to defendant in other action:* 4 S. C. 94; and submit: *There was no privity between the different insurance companies.*

*Messrs. Elliott & Herbert* and *Hagood & Rivers,* for respondent, cite: 172 Pa.; 34 Atl. 580; 70 S. E. 819; 93 Fed. 161; 143 N. W. 554; Civil Code, sec. 2711.

November 16, 1915.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Some time in January, 1911, plaintiff applied to the Bailey Furniture and Lumber Company, which was acting as agent at Union, S. C., for a number of fire insurance companies,

incluing those herein mentioned, for insurance on his stock of merchandise and store furniture and fixtures, which was at Gregory's, about five miles from Union, in the sum of $800, and paid the premium demanded for that amount of insurance. Nothing was said about what company should write the policy. That was left to the agent, who gave him a policy in the London and Lancashire Company. In a short time, that company wrote the agent, asking to be relieved of the risk; and, on February 15, 1911, the agent wrote another policy for the same amount and covering the same property in the defendant company, and sent it to plaintiff by mail, stating the facts, and requesting him to return the London and Lancashire policy, which he did. On March 9th, defendant wrote and telegraphed the agent that it did not care to carry the risk, and instructed him to cancel its policy. On March 10th, the agent wrote another policy for the same amount and covering the same property in the Fidelity Phœnix Company, and mailed it to plaintiff, with a letter which read: "Dear Sir: Please find enclosed policy, and we will ask you to please return the other one at the earliest possible date. The company we wrote it in this last time did not approve of the policy and we have tried it in another, but if they fail to approve it we will have to refund the amount of the premium to you. Regretting this annoyance, we beg to remain." On the 11th, he wrote defendant what he had done, and that it had been protected against loss, and that he would return its policy as soon as he could get it. Plaintiff received the Fidelity-Phœnix policy and the letter above quoted, on March 11th, which was on Saturday. On Monday night, March 13th, the property was destroyed by fire, plaintiff having both policies in his possession. He reported the loss to the agent, who reported it to the Fidelity-Phœnix Company. In a short time, the adjuster of that company came, and he and the agent went to see plaintiff. On discovering that plaintiff had both policies in his possession, and that the five days'

notice for cancellation of defendant's policy had not expired at date of the fire (the policy contained a stipulation that it might be cancelled by the company on five days' notice) the adjuster told plaintiff that defendant, and not the Fidelity-Phœnix, was liable to him for the loss, and, with the acquiescence of plaintiff, carried off with him the Fidelity-Phœnix policy, plaintiff saying that he did not care which company paid the loss, provided one of them was liable for it.

It seems that the loss was then reported to the defendant, whose adjuster went to see plaintiff, and, on April 19th, he gave defendant's adjuster an affidavit, in which he said, as to the substitution of the Fidelity-Phœnix policy for that of defendant: "That he had no objection to returning the Equitable policy and accepting the policy of the Fidelity-Phœnix in the place of it, as he simply expected the Bailey Furniture and Lumber Company to keep him insured, and it made no difference to him what company they insured him in, just so it was a good company.

That he expected to return the Equitable policy and take the policy of the Fidelity-Phœnix in place of it, and would have done so, excepting for the fact that he was unwell and did not feel able to worry with it just at that time.

In addition to this, he fully expected to be in Union within a few days, and thought he would bring the Equitable policy to the Bailey Furniture and Lumber Company when he came to town. Furthermore, that it makes no difference to him which company pays him his loss, but that he does hold one of them responsible for it.

That the policy of the Fidelity-Phœnix Insurance Company was dated to go into effect on March 10, 1911."

Defendant having denied liability, on the ground that the policy of the Fidelity-Phœnix had been substituted for its policy, in July, 1911, plaintiff brought suit against the Fidelity-Phœnix for the loss. That company answered and denied liability on the ground, among others, that the defendant herein—the Equitable Company—was liable. In

November, 1912, after issue joined, plaintiff compromised his suit against the Fidelity-Phœnix Company, on payment to him by that company of the sum of $250.

In August, 1913, this action was commenced on the policy issued by defendant. The sole defense is that the policy of the Fidelity-Phœnix was substituted for that of defendant, and defendant was thereby relieved of liability. Upon that issue, the jury found for defendant, and, from judgment on the verdict, plaintiff appealed, assigning error in the refusal of the Court to direct a verdict in his favor, and in the refusal of certain requests to charge, and in certain remarks made by the Court, in the presence of the jury, in colloquies between the Court and counsel during the argument of the motions for the direction of the verdict, both sides having made such a motion.

At the trial, plaintiff testified that, up to the time of the fire, he had not decided to accept the Fidelity-Phœnix policy in place of that of defendant, and attempted to explain his action against the Fidelity-Phœnix Company by saying that he sent all his papers to his attorney, with instruction to collect the insurance, without telling him which company to sue, and that, shortly after doing so, he went to Macon, Ga., to live, and did not return to this State, until the fall of 1912, when he discovered that suit had been brought against that company; and that he compromised that suit, because he was advised by his attorney that he had a weak case against that company, and a stronger case against this defendant.

If that action had merely been discontinued, plaintiff's testimony at the trial that, up to the time of the fire, he had not decided to accept the policy of the Fidelity-Phœnix in place of that of the present defendant, though contradictory of what he said in his affidavit of April 19th, and his explanation of the suit having been brought against the Fidelity-Phœnix by the mistake of his attorney, would have raised issues of fact which would have entitled him to have

his case submitted to the jury.   But, if the facts were as testified to by him, he knew them as well, when he compromised the suit which had been brought against the Fidelity-Phœnix and accepted that company's money, and released it from all further liability, as he knew them at the time of the trial of this case.   And he certainly knew, when he accepted the compromise, that the suit had been brought against the Fidelity-Phœnix, if he did not know it before. If his testimony in this case was true, that company did not owe him anything; and, as matter of law, he must be held to have known it, whether he actually knew it or not.   For clearly both companies were not liable to him; and his testimony is open to no other reasonable inference than that he knew that much about his and their rights.   Therefore, his compromising the suit against the Fidelity-Phœnix and accepting the money of that company was a ratification of the act of his attorney in bringing that suit, even if he had not authorized it before, and it must be taken in law as proof conclusive of his election—that he had accepted its policy in substitution for that of this defendant.   Having done so, he cannot now pursue this defendant.   If he had recovered the full amount of his insurance from the Fidelity-Phœnix, clearly he would have had no right of action against this defendant, for he paid for only one policy and was entitled to the protection of only one.   He was entitled to recover, in the suit against the Fidelity-Phœnix, the full amount sued for, or nothing.   That he chose to accept less than was due him, or less than he might have recovered on that policy, was no doubt an unfortunate error of judgment, but it cannot affect his situation now, for it shows conclusively that he had accepted the policy of that company in substitution of that of this defendant.

In this view of the case, the alleged errors were immaterial and not prejudicial.   The judgment below is clearly right and should be affirmed.

Judgment affirmed.