MOLLIE JERNIGAN v. NATIONAL UNION FIRE INSURANCE COMPANY, YORKSHIRE INSURANCE COMPANY AND METROPOLITAN LIFE INSURANCE COMPANY.

(Filed 27 April, 1932.)

**Insurance H a—Local agent of insurer may not cancel policy at its request without consent of insured.**

The local agent of a fire insurance company has no authority to cancel a binding policy of fire insurance at the request of the insurer without the consent of the insured, and where he attempts to do so without the knowledge or consent of the insured, and issues another policy of the same kind in another company in its place, the cancellation is without effect and the original policy remains in force, and the insured may recover thereon for loss by fire sustained before knowledge of the agent's acts, there being no evidence of ratification by the insured.

CIVIL ACTION, before *Moore, Special Judge,* at Special Term, 1931, of HARNETT.

The facts as agreed upon by the parties are substantially as follows: On 3 October, 1928, the National Union Fire Insurance Company, through its agent, James Best, issued its fire insurance policy in standard form, insuring the dwelling of plaintiff in the sum of $2,000, and the furniture in said dwelling in the sum of $1,000. A New York Standard mortgage clause, payable to the Metropolitan Life Insurance Company, was attached to said policy, which was then forwarded to said company. On 2 December, 1930, the National Union Fire Insurance Company notified the local agent, James Best, that it desired to cancel said policy; and thereupon on the same day the said Best, who was also agent for the Yorkshire Insurance Company, issued a policy of insurance in the Yorkshire Company for the identical amount specified in the National Union policy. The Yorkshire policy was in standard form with a New York loss clause payable to the Metropolitan Life Insurance Company, and the agent, James Best, "promptly sent what is known as the daily report of the issuance of said policy to the Yorkshire Insurance Company, and it received said daily report prior to the fire, to wit, on 4 December, 1930, and made no objection to the issuance of the policy." The local agent thereupon, on the same day, to wit, 2 December, 1930, notified the National Union Company that its policy had been canceled. When the agent sent the Yorkshire policy to the life insurance company which held the mortgage upon the property of plaintiff, he requested said mortgagee to return the National Union policy and accept the Yorkshire policy in lieu thereof. On 8 December, 1930, the property of plaintiff was destroyed by fire, and at the time of the fire the mortgagee, Metropolitan Life Insurance Company, held in its pos-

session both policies of fire insurance, but it retained the Yorkshire policy and returned the National Union policy to the agent Best "without knowledge of the occurrence of the fire."

None of the transactions resulting in the substitution of insurance policies were known to the insured until after the destruction of the property by fire. No premium was returned to the plaintiff by the National Union, nor was she called upon by the Yorkshire to pay any premium for its policy.

After the fire, the local agent notified the Yorkshire Company of the loss, but did not notify the National Union of said loss. However, the National Union sent to the agent the sum of $38.14, which said company had collected as premium on its policy. After the fire the plaintiff said that she "was looking to the National Union Fire Insurance Company to whom she had paid her premium, to pay the loss and damage which she had sustained." Thereafter she was advised by counsel to institute an action against both companies "to the end that the court might declare the liability of the respective fire insurance companies to the plaintiff and her mortgagee  .  .  .  ; that the plaintiff disclaims any preference between the Yorkshire Insurance Company and the National Union Fire Insurance Company, but contends that the one or the other or both are liable to her, etc.

Upon the agreed facts the court was of the opinion that "James Best, local agent of the National Union Fire Insurance Company, and local agent of the Yorkshire Fire Insurance Company, had the right to cancel the policy issued by the National Union Fire Insurance Company and to substitute a like policy of the Yorkshire Insurance Company therefor without formally notifying the insured, provided said substitution could be made without injury to the insured; and the court being of the opinion that the policy of the Yorkshire Fire Insurance Company was legally issued and substituted for the policy of the National Union Fire Insurance Company, and that the policy of the Yorkshire Fire Insurance Company was in force on the date the plaintiff's property was destroyed by fire." Thereupon the court adjudged that the plaintiff was entitled to recover upon the Yorkshire policy.

From the judgment so entered the defendant, Yorkshire Insurance Company, appealed.

*Clifford & Williams for plaintiff.*
*Smith & McLeod for National Union Fire Insurance Company.*
*Brooks, Parker, Smith & Wharton for Yorkshire Insurance Company.*

BROGDEN, J. The questions of law presented by the record are as follows:

1. Was the National Union Fire Insurance policy duly canceled?

2. Did the plaintiff ratify the substitution or issuance of the Yorkshire policy in lieu of the National Union policy?

The first question must be answered in the negative.

The methods prescribed by law for the cancellation of fire insurance policies are discussed and applied in *Dawson v. Insurance Co.,* 192 N. C., 312, 135 S. E., 34. The plaintiff, for whose benefit the insurance was procured, knew nothing of the cancellation of the National Union policy, therefore, neither approved, waived nor ratified the cancellation. In the *Dawson case* the Court said: "No contract, valid in its inception, and unobjectionable in its terms, can be canceled, without the consent of all parties, who have acquired rights thereunder."

The power of a local insurance agent, without the knowledge or consent of the insured, to substitute one policy for another is discussed in the following cases: *Waterloo Lumber Co. v. Des Moines Ins. Co.,* 138 N. W., 504, (51 L. R. A. (N. S.), 539); *Niagara Fire Ins. Co. v. Raden,* 5 Southern, 876; *Grace v. Ins. Co.,* 109 U. S., 278; *City of New York Ins. Co. v. Jordan,* 284 Fed., 420; *Clark v. Ins. Co. North America,* 35 Atlantic, 1008; *Insurance Company of North America v. Burton,* 294 Pacific, 796; *Gulf Ins. Co. v. Landamore,* 22 Southwestern (2d), 978; *Johnson v. Ins. Co.,* 63 Northeastern, 610; *N. Pellagi & Co. v. Orient Ins. Co.,* 148 Atlantic, 869.

The *Clark case, supra,* is directly in point and states the principle involved as follows: "There was no contract between the plaintiff and the defendant company at the time the loss occurred. There was a subsisting contract between the plaintiff and the Commercial Union. The unauthorized attempt on the part of the agent of the defendant company to make such a contract by entering in his "daily report" the memorandum of such contract was not enough. The contract of insurance is to be tested by principles applicable to the making of contracts in general. The terms of the contract must have been agreed upon. This necessarily implies the action of two minds, of two contracting parties. If it is incomplete in any material particular, or the assent of either party is wanting, it is of no binding force."

The *Burton case, supra,* is also directly in point. The syllabus by the Court declares: "Where one applies to an agent authorized to issue policies and collects premiums for insurance in a stated sum, and the agent issued a policy therefor, delivered it and collected the premium, the contract was complete, and the agent on notice from insurer to cancel the policy could not, without insured's knowledge, place the risk with another insurer." The opinion of the Oklahoma Court in said case also said: "There is a well established rule that, where an owner constitutes the agent of a fire insurance company his agent to keep the

property insured with power to select the insurer or insurers, such agency carries with it the power to cancel a policy without notice to the insured and substitute therefor a policy in another company, as he may be the agent for the insured for such purpose, and as such may, for the insured, waive notice." And the opinion continues: "There being no evidence of express authority for the agent to cancel the first policy, and there being no sufficient evidence of direction by plaintiff to the agent to insure the property and keep it insured, and no evidence of a course of dealing or custom between the parties sufficient to justify a conclusion that the agent was authorized to act for the plaintiff to the extent of waiving notice of the cancellation of the first policy, we conclude that, no notice having been given to plaintiff as required by law and the terms of the policy, the first policy was not canceled before the fire occurred, and it was then too late."

The foregoing cases and many others of like tenor fully recognize the right of the insured, to ratify the action of the local agent in issuing the substituted policy, for the reason that both policies were obviously issued for his benefit. Nevertheless, in the case at bar, the insured stated that she "was looking to the National Union Fire Insurance Company to whom she had paid her premium to pay the loss and damage which she had sustained."

The result is that the National Union policy, not having been properly canceled, was in full force at the time of the fire, and the local agent, without the knowledge or consent of the plaintiff, had no authority to issue the Yorkshire policy. Moreover, as the insured has not ratified the issuance of the Yorkshire policy, she is entitled to recover upon the first policy issued. Consequently, the judgment is

Reversed.