14061

SUSSEX FIRE INS. CO. v. STANDARD FIRE INS. CO. OF HARTFORD, CONN.

(179 S. E., 903)

*Messrs. Samuel Want* and *Melvin Hyman,* for appellant,

*Messrs. Wilcox, Hardee & Wallace,* for respondent, ▮

May 9, 1935.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The following facts appear from the record for appeal:

On December 19, 1930, the Essex Fire Insurance Company, through its agent, one S. D. Ellison, issued to Mrs. Sophia T. Buchanan, a resident of Clarks Hill, S. C., a policy covering a dwelling house owned by her in the Town of Winnsboro, and insuring her, for a period of one year from that date, against loss by fire in the sum of $1,500.00. We quote here the following provision: "This policy shall be cancelled at any time at the request of the insured in which case the company shall upon demand and surrender of this policy refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by the company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the *pro rata* premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

Ellison, it appears, resided at Winnsboro, and represented a number of fire insurance companies, including the Sussex, successor in interest to the Essex, and the Standard. On November 21, 1931, in response to a request received from the Sussex to cancel all South Carolina risks, Ellison wrote a policy in the Standard insuring the dwelling mentioned in the sum of $1,500.00, and on the same day made a notation on his records indicating cancellation of the Essex policy. On the afternoon of the following day, November 22, the Standard policy was mailed to Mrs. Buchanan at Clarks Hill, with a letter informing her about the matter and requesting her to return to the agent at Winnsboro the Essex policy. On the same day Ellison also addressed communications to the Essex and the Standard advising each of what had been done. In the early hours of the morning after, November 23d, before Mrs. Buchanan received the policy issued by the defendant company, and, before she received the request for surrender of the Essex policy, the house in question was destroyed by fire.

Thereafter, as payment of her claim was not made, the insured brought suit against the Essex and Sussex companies in the Court of Common Pleas for Fairfield County, in which she sought to recover the proceeds of the policy that had been issued her by the Essex. That case, however, was not tried, but was ended with an order dismissing it "with prejudice," following a transaction between Mrs. Buchanan and the plaintiff company, whereby that company undertook, as it says, to acquire an assignment of the insured's claim against the respondent company and of the policy issued her by it. To accomplish this, the Sussex Company paid Mrs. Buchanan the full amount of her claim. Subsequently, the present action was commenced by the plaintiff, as such alleged assignee, to recover on the policy which had been issued the insured by the Standard Company.

On trial of the case the Circuit Judge granted the defendant's motion for a nonsuit, and later refused, on motion of

the plaintiff, to open the nonsuit and grant a new trial. We are now asked to review and reverse the orders made below.

Decision of the following questions will dispose of the appeal: (1) Was there any evidence requiring the trial Judge to submit to the jury the issue whether Ellison was the agent of Mrs. Buchanan in making substitution of the policies? (2) If he was not such agent, authorized to bind her in what he did, was there any testimony to the effect that she ratified his acts? (3) If he was not her agent for cancellation and substitution, was there nevertheless ratification by the defendant company of what he did?

As to the first question, Mrs. Buchanan testified that her house at Winnsboro had been insured through Ellison's agency for perhaps fifteen years, that she generally left it with him to select the company, but that she would require him to give her the policy, and that "I would generally tell him that I knew my own business better, and if I liked another policy I would take that, but I think I insured most of the time in the Essex."

Ellison said that, while he renewed the policy on this building from year to year without request from Mrs. Buchanan, he would not deny her statement that she reserved the right to accept any policy that he might send her; that he did not recollect ever having changed a policy of hers during the year of coverage, and prior to this transaction had never taken up a policy of hers which was in effect; and that, when he transferred insurance from one company to another, it was done at the end of the policy year and because he wanted to give the other companies some business; and that he did this as agent of the companies.

We find nothing in this testimony, or in any testimony contained in the record, that will support an inference that the insured authorized Ellison to waive for her any of the contractual provisions of the Essex policy, especially the five-day notice required for its cancellation, or that she constituted him her agent to accept delivery, without her knowl-

edge and consent, of a policy issued in lieu of the one held by her. On the contrary, the only inference to be drawn therefrom is that the insured accepted the policies issued in her favor only when they met with her approval, even though she permitted the agent to select the company in which to place the insurance. As to that, it is held, in accord, as we think, with reason and authority, that evidence showing a custom to renew a policy of insurance upon its expiration without the request of the insured, as Ellison testified in this case he had done, will not establish agency by such custom as will carry with it the power and authority to accept or to waive notice of cancellation and to bind the insured, without his knowledge, by substitution. See annotation to *Jernigan v. Insurance Company,* 202 N. C., 677, 163 S. E., 762, 83 A. L. R., 298.

In the *Jernigan case* it was held that a common agent of two insurance companies was without authority to cancel, unknown to the insured, a fire insurance policy in one company at insurer's request and issue policy in the other company.

In *Dallas v. Fire Insurance Company,* 113 S. C., 492, 101 S. E., 859, this Court held that, where the insured was entitled to receive five days' notice in writing of the company's intention to cancel his fire policy, there was no effectual cancellation without such notice given him.

In *Hydrick v. Insurance Company,* 131 S. C., 8, 127 S. E., 367, the syllabus, which expresses the holding of the Court, reads: "Where fire insurance agent unable to obtain removal permit, to protect insured, and without his knowledge, had policies in same amount issued by other companies with intent to substitute them, and where insured property was destroyed by fire before insured learned of issuance of such policies, held, there was no meeting of minds sufficient to make binding contracts between insured and such substituted companies."

Under the evidence in the case at bar, the trial Court committed no error in refusing to submit this issue to the jury.

As to the second question, the appellant contends that, even if agency as to the insured was not shown, Mrs. Buchanan, in retaining possession of the respondent's policy and undertaking to effect collection of it, ratified the acts of Ellison in making the substitution. On this point, Mrs. Buchanan testified that she kept both policies, as she did not know what to do, that she was advised that she might recover on both, and that she told Perry, the agent of the Standard Company, that he ought to pay his.

We do not think that the insured's course of conduct, in the circumstances, tends to show ratification by her of Ellison's acts. After she received the Standard policy, although she kept it, she refused to surrender the Sussex policy, and finally brought suit on the latter, alleging in her verified complaint that it was in full force and effect at the time of the fire. Besides, as it clearly appears that the parties did not intend that there should be double insurance, and as the Sussex policy, as we hold, was in force at the time the property was destroyed, .it follows that the Standard policy never came into effect. Furthermore, as contended by the respondent, generally ratification of an unauthorized substitution cannot be made by the insured after loss has occurred. Therefore any acts of the insured, in such circumstances, are not determinative of liability for loss. Of course, if Ellison had been acting as the agent of Mrs. Buchanan in the matter, a different situation would be presented. But, as he was not authorized by her to accept notice of cancellation and to make substitution, the Sussex Company could cancel the policy only by giving her the five-day notice provided therein. As no such notice was given, there was no effectual cancellation, and the relation between the insurer and the insured had not been changed in any particular at the time of the loss and the liability of the company became absolute the moment the property was destroyed, and the second risk did

not attach. Of course, the insured may put himself in a position where he would be estopped to deny that there was an effective substitution (*McCormick v. Insurance Company,* 102 S. C., 473, 86 S. E., 1059), but no such situation arises under the facts of this case. Judge Johnson was therefore right in holding that there was no question here to be submitted to the jury.

The third question stated is rendered academic by our disposition of the second, and a discussion of it becomes unnecessary.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES CARTER and BONHAM and MESSRS. ACTING ASSOCIATE JUSTICES T. S. SEASE and A. L. GASTON concur.