# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 19 2020, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT
HISCOX INSURANCE COMPANY, INC.

Logan C. Hughes
Robert G. Sylvester
Reminger Co., L.P.A.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
MIDWAY AUCTION COMPANY
A/K/A GILBERT AND
ASSOCIATES, LLC

Glen E. Koch, II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Hiscox Insurance Company, Inc.,
*Appellant-Defendant, Counter-Plaintiff/*
*Cross-Claimant,*

     v.

Sandra Sanford[1] and Midway
Auction Company a/k/a Gilbert
and Associates, LLC,
*Appellee-Plaintiff, Counter-Defendant,*
*Appellee-Defendant/Cross-Defendant.*

**Barnes, Senior Judge.**

February 19, 2020

Court of Appeals Case No.
19A-CT-1512
Appeal from the Morgan Superior
Court
The Honorable Sara A. Dungan,
Judge
Trial Court Cause No.
55D03-1802-CT-261

---

[1] Sandford is represented by counsel in the trial court. Sanford's counsel has entered an appearance in this interlocutory appeal but has not filed a brief with this Court. However, under Indiana Appellate Rule 17(A) "A party of record in the trial court or Administrative Agency shall be a party on appeal."

# Statement of the Case

Hiscox Insurance Company, Inc. ("Hiscox") brings this interlocutory appeal from the trial court's order denying its motion for summary judgment on a policy coverage issue, contending that the trial court erred by failing to find that Hiscox is entitled to judgment as a matter of law. We affirm.

# Issue

Hiscox presents the following issue which we restate as the following question:

> Did the trial court err by failing to find that Hiscox properly cancelled the insurance policy issued to Gilbert and Associates, LLC ("Gilbert") for non-payment of a premium, thus entitling Hiscox to judgment as a matter of law?

# Facts and Procedural History

Sandra Sanford ("Sanford") filed a personal injury complaint alleging that she was injured on the premises of Midway Auction Company, owned and operated by Gilbert. Sanford's injuries were alleged to have occurred on January 1, 2018, and her complaint was filed on February 16, 2018, contending that the injuries were suffered because of alleged negligence on the part of Gilbert. Gilbert then turned to Hiscox seeking coverage for Sanford's claim under an insurance policy issued by Hiscox. Hiscox denied coverage alleging that the policy was cancelled for non-payment of the monthly premiums several months prior to Sanford's alleged injury.

[4] Next, on March 19, 2018, Sanford filed an amended complaint for damages seeking a declaratory judgment that Hiscox's insurance policy was effective on the date of her alleged injury. On January 23, 2019, Hiscox filed its motion for summary judgment seeking a declaratory judgment that Hiscox properly cancelled its insurance policy for Gilbert's non-payment of insurance premiums such that the injuries alleged in Sanford's complaint were not covered.

[5] On May 15, 2019, the trial court entered its order denying Hiscox's motion for summary judgment. On June 14, 2019, Hiscox filed a motion to certify for interlocutory appeal the trial court's decision on summary judgment, and the trial court granted Hiscox's motion. This Court granted Hiscox's request to accept the permissive interlocutory appeal.

[6] The pertinent facts developed through the argument on summary judgment are as follows. Hiscox markets and sells insurance products, including general liability insurance, professional liability insurance and a business owners policy which is combined property and liability coverage for small business owners in the United States. Those policies are sold directly to consumers on-line via the corporate website and through a call center. Insurance premiums are collected by credit or debit card, and insureds are given the option of paying premiums in a lump sum or monthly installments. Policy documents are transmitted to policyholders by email at the time of purchase.

[7] On May 25, 2017, Carl Gilbert ("Carl"), who owned Gilbert, contacted Hiscox and entered into a contract for a business owners policy No. UDC-1984671-

BOP-17 ("the Policy"). During a phone call to Hiscox's call center, Carl provided his name, telephone number, mailing address, email address, and debit card information linked to an account issued by Citizens Bank, to make automatic, monthly payments. Carl was the only individual with access to that bank account.

[8] The correct mailing address for Gilbert is as follows:

> Gilbert and Associates, LLC
> 554 W. State Rd. 42
> Mooresville, IN 46158

The address entered into the Hiscox database was as follows:

> Gilbert and Associates, LLC
> 554 W. State Rd. 42
> 42
> Mooresville, IN 46158

Appellant's App. Vol. II, pp. 153, 167.

[9] The incorrect address is found in four separate places in the Policy. *Id.* at 39, 114, 116. In the application summary, the address for Gilbert is listed twice with the additional "42" on a separate line. *Id.* at 114, 116. That same address appears twice in the "Businessowners Insurance Declarations" portion of the Policy. *Id.* at 39.

[10] The "Your Insurance documents" section of the Policy includes two provisions reading as follows:

Enclosed you will find the policy documents that make up your insurance contract with us.

Please read through all of these documents. If you have any questions or need to update any of your information please call us at 888-202-3007 (Mon-Fri, 8am-10pm EST).

\* \* \*

Application Summary

This is a summary of the information that you provided to us as part of your application. Please review this document and let us know if any of the information is incorrect.

*Id*. at 37.

[11] Hiscox received two subsequent payments from Gilbert on July 26, 2017 and August 28, 2017 but received no additional premium payments for the Policy. Sometime around September 15, 2017, the debit card number associated with Gilbert's account with Citizens Bank changed. Although automatic payments for other Gilbert's contractual obligations continued after the card number changed, no payments were made for the Policy after September 2017, and Hiscox did not receive a payment due in September 2017. Gilbert's bank statement did not include a record of payment for the insurance premium in September.

[12] When an insured fails to pay its premium, Hiscox will cancel the policy pursuant to the terms of cancellation set forth in the Policy, which provides in pertinent part as follows:

III–COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I–PROPERTY AND SECTION II–LIABILITY)

A. Cancellation

* * *

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

* * *

b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

* * *

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

*Id.* at 88-89.

Hiscox's normal business practice in Indiana for cancelling policies for nonpayment of a premium is to mail a notice of cancellation to the last known address of the named insured at least ten days prior to the effective date of the cancellation. Hiscox's normal business practice also includes obtaining a certificate of mailing from the United States Postal Service verifying the date the notice of cancellation was transmitted to the named insured at the address in the Policy. The address listed on the certificate of mailing was as follows:

Gilbert and Associates, LLC
554 W State Rd 42 42
Mooresville, IN 46158

Appellant's App. Vol. II, p. 166.

[14] On October 11, 2017, Hiscox prepared a notice of cancellation of the Policy to Gilbert at the address with the additional "42" on a separate line as appeared in the Policy and informed Gilbert that the Policy would be cancelled on October 26, 2017 at 12:01 a.m. local time. *Id.* at 34, 120. The notice also indicated that if the premium due was received prior to the cancellation date, the Policy would remain in effect. *Id.* The certificate of mailing issued by the United States Postal Service, however, confirmed the mailing of the notice on October 11, 2017, but at the address with the additional "42" appearing on the same line instead of a separate line. *Id.* at 120.

[15] Hiscox claimed that it also took the additional step, not required by contract, of leaving a voicemail message to Gilbert from Hiscox's call center informing Gilbert of the unpaid premium. Hiscox further claimed it did not receive payment of the outstanding premium and did not receive a response from Gilbert after the notice was mailed. Hiscox stated the Policy was cancelled by means of a cancellation endorsement on October 26, 2017. Hiscox further stated that the endorsement was transmitted to Gilbert via email.

[16] Carl filed an affidavit in opposition to Hiscox's motion. He denied receiving the notice of cancellation via U.S. Mail or receiving the voicemail message from Hiscox's call center. *Id.* at 53-54. Further, he averred that when he made the claim with Hiscox an agent told him over the phone that Hiscox's system had a problem delivering email to Gmail accounts. *Id.* at 153. Carl further

stated that he had a Gmail address, and that he had never received an email notifying him that he was delinquent in paying the premiums or that the Policy was going to be cancelled. *Id.* at 154. Additionally, he stated that it was a Hiscox agent who had entered the address into their database and that he never had access to or manipulated Hiscox's databases. *Id.* at 153-54.

[17] After hearing arguments and considering the designated materials, the trial court entered its order denying Hiscox's motion for summary judgment.

## Discussion and Decision

[18] Hiscox appeals from the denial of its motion for summary judgment. Our well-settled standard of review is as follows:

> We review summary judgment de novo, applying the same standard as the trial court: Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences.

> The initial burden is on the summary-judgment movant to demonstrate the absence of any genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with contrary evidence showing an issue for the trier of fact. And although the non-moving party has the burden of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's

decision to ensure that he was not improperly denied his day in court.

* * *

Summary judgment is a desirable tool to allow the trial court to dispose of cases where only legal issues exist. But it is also a blunt . . . instrument, by which the non-prevailing party is prevented from having his day in court. We have therefore cautioned that summary judgment is not a summary trial, and the Court of Appeals has often rightly observed that it is not appropriate merely because the non-movant appears unlikely to prevail at trial. In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.

*Hughley v. State*, 15 N.E.3d 1000, 1003-04 (Ind. 2014) (internal quotations, citations, and parentheticals omitted).

[19] "It has long been held in Indiana that insurance policies are governed by the law of contracts." *Pekin Ins. Co. v. Wheeler*, 493 N.E.2d 172, 174 (Ind. Ct. App. 1986). "[T]he term 'cancellation' refers to the termination of a policy at the end of the policy period." *Am. Family Mut. Ins. Co. v. Ramsey*, 425 N.E.2d 243, 244 (Ind. Ct. App. 1981). "As a general rule, once a valid contract of insurance has been effectuated, the right of either party to cancel it at pleasure can accrue in only three ways: by a concurrent agreement, by a reservation in the policy, by statute." *Cook v. Mich. Mut. Liab. Co.*, 289 N.E.2d 754, 758 (Ind. Ct. App. 1972) (quoting *Bushnell v. Krafft*, 183 N.E.2d 340, 343 (Ind. Ct. App. 1962)), *trans. denied*.

[20] Where the right to cancel exists only by contract, a cancellation clause is a condition requiring strict compliance to make an attempted cancellation valid. *Hibler v. Conseco, Inc.*, 744 N.E.2d 1012, 1018 (Ind. Ct. App. 2001) (citing 3 ERIC M. HOLMES, HOLMES' APPLEMAN ON INSURANCE 2D § 16.7 at 354 (2d ed.1998)). In *Moore v. Vernon Fire & Cas. Ins. Co.*, 234 N.E.2d 661, 663 (Ind. Ct. App. 1968), the Court at that time held that strict compliance with the terms of the policy was not necessary, that is, where the notice of cancellation stated an effective date *less* than ten days from the mailing of the notice, the notice was sufficient to cancel the policy ten days *after* the mailing of the notice. The Court further held that the notice was sufficient to inform the insured of the insurer's intentions to cancel the policy and to provide the insured with more time than required in the policy to obtain other insurance.

[21] Several cases from this jurisdiction and others have analyzed a variety of aspects of cancellation of insurance policies. We recite them here to thoroughly explain our decision.

[22] Starting first with cases involving the law in Indiana, the Seventh Circuit Court of Appeals, in *State Farm Mut. Auto. Ins. Co. v. Perrin*, 331 F.2d 565, 568 (7th Cir. 1964), observed that the majority view among states was that these cancellation clauses similar to the one at issue here were not ambiguous and that proof of depositing in the mail was sufficient to constitute notice regardless of the insured's lack of actual receipt.

[23] In deciding that case, the Seventh Circuit quoted from *Cnty. of Williamson v. Standard Accident Ins. Co.*, 32 Ill. App. 2d 363, 365, 178 N.E.2d 149, 150 (Ill. Ct. App. 1961), because the court found no Indiana cases yet addressing the issue. In that case, the insurer denied a claim, contending that the policy had been cancelled pursuant to a clause providing that mailing of notice shall be sufficient proof of notice. The address on the policy was incorrect but was mailed to the incorrect address as shown on the policy and was never actually received by the insured. The court noted that the insured had the policy in its possession for seven months prior to cancellation, and that the insured did not object to the correctness of the address reflected in the policy. The court cited to several cases, which follow, in support of its decision.

[24] In *Raiken v. Commercial Cas. Ins. Co.*, 135 A. 479, 480 (N.J. 1926). The New Jersey Supreme Court was asked to decide whether a notice of cancellation mailed to the address, which was incorrect, but listed in the policy, and returned to the insurer, constituted a valid cancellation of the policy. Despite evidence showing that the insurer was aware of the correct address of the insured, but had not corrected the policy to reflect such, the insurer had followed the terms of the policy and the cancellation was valid.

[25] Next, in *Duff v. Secured Fire & Marine Ins. Co.,* 227 S.W.2d 257 (Tex. Civ. App. 1949), a notice of cancellation was held to be valid because the address listed in the policy was the only post office in Texas with that specific address. Evidence that the address did not completely match that as listed in the policy because it failed to include "El Paso" did not render the cancellation ineffective. The

parties had contracted for delivery of the notice to the post office and not the individual insured. Evidence that the insured did not receive the notice did not invalidate the cancellation.

[26] In contrast, in *Irving v. Sunset Mut. Life Ins. Co.*, 4 Cal. App. 455, 41 P.2d 194, 196 (Cal. App. 1935), a case in which the insured notified the insurer of a mistake in address, but the agent failed to make a correction, proof of mailing was ineffective to constitute notice of cancellation. The mistake was made by an agent of the insurer and the policy was not corrected. Such prevented the insurer from asserting a defense against coverage under the policy.

[27] In *Boyle v. Inter Ins. Exch. of Chi. Motor Club*, 82 N.E.2d 179, 180 (Ill. Ct. App. 1948), the court held that a complete defense was shown by the insurer. The cancellation clause is the same as that in the present appeal and in the other cases. The evidence in *Boyle* showed that the notice of cancellation was mailed to the insured by the insurer to the address, albeit the incorrect address, but the one set forth in the policy.

[28] Later, returning to Indiana cases, in *Farber v. Great Am. Ins. Co.,* 406 F.2d 1228, 1229 (7th Cir. 1969), the Seventh Circuit Court of Appeals applied Indiana law to resolve a dispute involving two attacks on the cancellation clause of the insurance policy. The insured attacked the effectiveness of the cancellation because it was mailed less than the 10 days before cancellation. The insured also attacked the validity of the cancellation on the grounds that the notice was never actually received in the mail. The Seventh Circuit cited *Moore*, 234

N.E.2d at 663, to hold that, under the cancellation clause at issue, mailing of notice, not actual receipt, was sufficient to comply with the terms of the insurance contract. The cancellation was, therefore, valid and became effective ten days from the date of its mailing.

[29] *United Farm Bureau Mut. Ins. Co. v. Adams*, 251 N.E.2d 696, 700 (Ind. Ct. App. 1969), involves a declaratory judgment action. The insureds were involved in a collision and sought coverage from their insurer. The insurer denied coverage, claiming that the policy had been cancelled by mailing notice prior to the accident due to the insured's failure to pay premiums. The policy contained the same cancellation clause as the one involved in the present case, including the provision that mailing of notice shall be sufficient proof of notice. The insured claimed that no notice of cancellation was received. Because of language in the policy, the issue of receipt of the notice was factually irrelevant, but the issue of proof upon mailing was a live issue. There were enough gaps in the evidence to find that there was insufficient proof of mailing.

[30] In *Conrad v. Universal Fire & Cas. Ins. Co.*, 686 N.E.2d 840 (Ind. 1997), our Supreme Court addressed an appeal involving the mailing by an insurer of a cancellation notice by certified mail return receipt requested. The address used for mailing was the correct address as it appeared in the policy. The policy neither required nor prohibited the use of certified mail return receipt requested as the method of mailing. The language in the policy included the provision that "proof of mailing shall be sufficient proof of notice." *Id.* at 841. The Court held that proof of mailing did not create an irrebuttable presumption of notice,

where the notice was returned to the insurer marked "unclaimed." Summary judgment in favor of the insurer was reversed. In the present case, there was no certified mail issue, therefore, there was no return of the notice showing the mailing was "unclaimed."

[31] Although there are many other cases from other jurisdictions addressing the issue, the above is a sufficient sampling of decisions regarding challenges to cancellation notices and the addresses to which they are sent. Further, we note it appears that compliance with Indiana statutes pertaining to cancellation of policies is not at issue in the present case. *See* Ind. Code §§ 27-1-31-2, 2.5 (1988).

[32] Turning to the present appeal, we conclude that the trial court correctly denied Hiscox's motion for summary judgment. The incorrect address in the policy appears in the document providing a notice of cancellation. However, the certificate of mailing stamped by the United States Postal Service shows that the notice was mailed to an address different from the one appearing in the Policy, but also incorrect. The additional "42" did not appear on a separate line as it does in the Policy. As in *Adams*, 251 N.E.2d 696, the issue of receipt of the notice is factually irrelevant. However, the issue of proof of mailing presents a genuine issue of material fact including, but not limited to, who was responsible for the error in entering Gilbert's address into the Hiscox database, and what happens when a means of delivery used by the parties to the contract, such as electronically by email, fails or has intermittent delivery issues.

[33] The following language from *Adams*, concerning public policy considerations, albeit regarding motor vehicle liability insurance, seems relevant here. The following quote is worth considering.

> However, before moving to that task, we are moved to remark that the method in which this question is brought before the court is very appropriate in light of the important policy considerations inherent in the situation. Notice of motor vehicle liability insurance cancellation touches an area of public interest far beyond the scope of the relationship of the parties before us. The dangers of driving uninsured vehicles are obvious. Not only may one be subjected to the risk of a large financial liability at the hands of a negligently injured person, but the opportunity for that other injured party to gain a reasonable amount of damages for his injury is considerably lessened. It is for the benefit of every driver and passenger on our roads today, as well as ourselves, that we carry liability insurance. When this protection is being cancelled, public policy demands a strict compliance with the procedure involved so that the insured, or former insured, may be given reasonable opportunity to make other insurance arrangements before his old coverage is denied.

145 Ind. App. at 519-20, 251 N.E.2d at 698.

[34] As industries evolve to take advantage of advancements in technology, adjustments have been made to the means of acquiring insurance. We must be mindful to strike a balance between the competing interests of lowering the cost of overhead and generating more business volume against providing liability coverage at a reduced rate while providing coverage to protect those whose risk is contemplated by the insurance.

[35] As stated in *Hibler*, "Where the right to cancel exists only by contract, a cancellation clause is a condition requiring strict compliance to make an

attempted cancellation valid." 744 N.E.2d at 1018. Hiscox claims that it mailed the notice to the address provided in the Policy and that it was Gilbert's contractual duty to read the contract in its entirety and notify Hiscox of any inaccuracies. Gilbert argues that it was never in charge of nor had access to the Hiscox database and provided the agent at the call center with the correct information. Hiscox supports its argument in part by the certificate of mailing, which visibly shows an incorrect address not appearing in the Policy. Yet, the Policy provides that proof of mailing is sufficient proof of notice. Resolution of this issue requires a trier of fact where the parties' accounts of the truth differ, or the undisputed material facts support conflicting reasonable inferences. *See Hughley*, 15 N.E.3d at 1003. Such is the case here.

[36] Viewing the evidence most favorable to Gilbert, the non-moving party, we conclude, as did the trial court, that there exists a genuine issue of material fact such that summary judgment in favor of Hiscox is inappropriate.

# Conclusion

[37] In light of the foregoing, we affirm the trial court's denial of Hiscox's motion for summary judgment.

[38] Affirmed.

Mathias, J., and Pyle, J., concur.